LANDON W. SLOAN, JR. AND WIFE, PHYLLIS FAY SLOAN, PLAINTIFFS v. MILLER BUILDING CORPORATION, DEFENDANT

No. 945SC330

(Filed 6 June 1995)

**Labor and Employment § 196 (NCI4th)— workplace injury— employer's misconduct willful and wanton—sufficiency of evidence**

In plaintiff's action to recover for injuries sustained in a workplace fall, reasonable jurors could find that the conduct of defendant general contractor in the present case constituted will-

SLOAN v. MILLER BLDG. CORP.

[119 N.C. App. 162 (1995)]

ful or wanton misconduct sufficient to overcome the bar of plaintiff's contributory negligence where the evidence tended to show that defendant had little regard for workplace safety; defendant knew it was in violation of an OSHA standard requiring railings around the perimeter of an open floor; and defendant's indifference to the regulations contributing to plaintiff's injuries on this and other projects constituted a pattern of noncompliance and conscious disregard of OSHA standards.

**Am Jur 2d, Master and Servant §§ 121, 361 et seq., 372 et seq.**

Appeal by plaintiff from order entered 10 January 1994 by Judge Napoleon B. Barefoot in New Hanover County Superior Court. Heard in the Court of Appeals 31 January 1995.

*Armstrong & Armstrong, P.A., by Emery D. Ashley, for plaintiff-appellants.*

*Marshall, Williams & Gorham, L.L.P., by Ronald H. Woodruff, for defendant-appellee.*

MARTIN, MARK D., Judge.

The sole issue presented by the parties is whether the trial court erred by finding evidence of defendant's willful or wanton negligence insufficient to overcome the bar of contributory negligence and granting defendant's motion for summary judgment. We reverse.

On 21 October 1985 plaintiff Landon W. Sloan, Jr. (Sloan) was injured when he fell three stories to the ground from the Campus Edge Phase II Condominium Project (project) in Wilmington, North Carolina. Defendant was the general contractor for the project.

Defendant hired F & F Construction Company (F & F) to perform carpentry services. F & F hired Sloan as a carpenter. Defendant hired Sloan and two other employees of F & F to complete the exterior trim carpentry work. Sloan worked in this capacity for approximately one week before the accident.

On the third floor where Sloan worked there were no standard railings or the equivalent around the perimeter of the floor as required by OSHA standard 29 CFR 1926.500(d)(1). More than one month prior to Sloan's fall defendant noted in its inspection records that standard railings or the equivalent were needed, but did not erect

them. Also, F & F asked defendant to provide standard railings or the equivalent for protection of persons on the floor. Instead, defendant tied ropes which it knew did not satisfy OSHA standard 29 CFR 1926.500(d)(1) to each post around the perimeter of the third floor.

On Saturday, 19 October 1985, the ropes in place to provide safety protection to third floor workers were removed. The ropes were not replaced and no comparable protective device was substituted.

On the morning of 21 October 1985 Sloan arrived at work and noticed the third floor ropes were missing and the posts were painted. Sloan assumed the ropes had been removed over the weekend by the painting contractor for the project and reported to work on the third floor. He made no effort to replace the ropes or ask the general contractor to replace them.

On 21 October 1985 the atmosphere on the third floor was hectic. Sloan worked as the lead carpenter toward the middle of the third floor cutting materials for co-workers. At approximately 2:00 p.m. he walked to the end of the building to discuss work with other carpenters. Other workers were in the hallway carrying material. As Sloan tried to discuss work with the other carpenters he kept moving to let others pass by. He tried to get out of the way by stepping back and down on some scaffolding. As Sloan sat on the scaffolding it gave way. He reached for the safety rope, which had been removed, and dropped three stories to the ground.

During the course of this project, defendant did not have anyone on site responsible for safety and compliance with either company policy or OSHA regulations. Defendant designated Bob Becher "supervisor" of the construction site, but instead of supervising the site, he worked a crew of men. Becher apparently never performed any type of inspections, never held any safety meetings, and never mentioned safety on the site. Defendant's failure to do these things violated internal company policy.

From 13 May 1981 until the date of Sloan's fall, defendant was cited for thirty-nine OSHA violations. (Eight serious violations and thirty-one non-serious violations). Five of the serious violations and three of the non-serious violations involved defendant's failure to provide standard railings or the equivalent on open-sided floors. On 17 May 1984 defendant was cited for OSHA violations at the Campus Edge Phase I Condominium Project, the job site involved in the pres-

ent case, including a serious violation for its failure to have standard railings or the equivalent on the open-sided second and third floors.

On 23 May 1984 defendant was cited for serious violations, including failure to provide standard railings or the equivalent on open-sided floors, at the Harbor Inn condominiums/hotel construction project at Wrightsville Beach, North Carolina. An OSHA safety officer questioned Mr. Deal, general superintendent of the Harbor Inn condominiums/hotel construction project and employee of defendant for 35 years, regarding the 23 May 1984 OSHA violations. The safety officer reported Mr. Deal stated, "if . . . (OSHA) knew anything about construction [it] would know that these conditions (cited) were not hazards," and "his employees knew better that [sic] to get to [sic] close to open sided floors, . . . the job could be completed by the time he complied with all the standards." An OSHA safety officer questioned Mr. Henry Miller, Sr., Chairman of the Board and Safety Director of Miller Building Corporation, regarding the 23 May 1984 violations. The safety officer reported Mr. Miller indicated, "Mr. Deal has worked for him for 35 years and knows the requirement [OSHA standards], but . . . is the type of superintendent that will wait until an OSHA inspection before correcting hazardous conditions."

There is evidence another employee was injured prior to Sloan during construction of phase I of the Campus Edge project in a fall from an open-sided floor without the required standard railings or the equivalent.

Sloan filed this action on 11 June 1986 seeking damages for injuries he sustained as a result of the 21 October 1985 fall. On 10 October 1988 he took a voluntary dismissal without prejudice pursuant to Rule 41 of the North Carolina Rules of Civil Procedure. On 6 October 1989 Sloan refiled his claim. His wife, Phyllis Fay Sloan, also filed a claim for loss of consortium. On 17 June 1991 plaintiffs filed an amended complaint. On 9 July 1991 defendant filed its answer and, on 8 December 1993, moved for summary judgment based on the contributory negligence of Sloan. On 10 January 1994 the trial court granted defendant's motion for summary judgment.

The United States Supreme Court explained the role of the trial court when considering a motion for summary judgment in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L. Ed. 2d 202 (1986):

The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the

plaintiff is entitled to a verdict—"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

*Id.* at 252, 91 L. Ed. 2d at 214 (citation omitted) (emphasis added).

Within the context of negligence claims, "[a]lthough there may be no question of fact, when the facts are such that reasonable men could differ on the issue of negligence courts have generally considered summary judgment improper." *Willis v. Power Co.*, 42 N.C. App. 582, 591, 257 S.E.2d 471, 477 (1979); *See Dettor v. BHI Property Co. No. 101*, 324 N.C. 518, 522, 379 S.E.2d 851, 853 (1989). Rather, such questions must be resolved by the jury. 324 N.C. at 523, 379 S.E.2d at 853.

On appeal plaintiffs contend the trial court erred by finding evidence of defendant's alleged willful or wanton negligence insufficient, as a matter of law, to overcome the bar of Sloan's contributory negligence and granting summary judgment to the defendant.

Pursuant to the regulatory adoption procedure in N.C. Gen. Stat. § 95-131(a), all federal occupational safety and health standards constitute the regulatory standard in North Carolina, unless alternative regulations are promulgated by the North Carolina Commissioner of Labor. "A statute or ordinance designed for the protection of the public is a 'safety' enactment and its violation constitutes negligence *per se* . . . ." *Jackson v. Housing Authority of High Point*, 73 N.C. App. 363, 368, 326 S.E.2d 295, 298 (1985), *aff'd*, 316 N.C. 259, 341 S.E.2d 523 (1986). The parties agree 29 CFR 1926.500(d) is the relevant safety statute at issue:

> *Guarding of open-sided floors, platforms, and runways.* (1) Every open-sided floor or platform 6 feet or more above adjacent floor or ground level shall be guarded by a standard railing, or the equivalent, as specified in paragraph (f)(1)(i) of this section, on all open sides . . . . The railing shall be provided with a standard toeboard wherever, beneath the open sides, persons can pass, or there is moving machinery, or there is equipment with which falling material could create a hazard.

29 CFR 1926.500(d) (1994). 29 CFR 1926.500(f)(1) sets forth standard specifications for standard railings as follows:

> A standard railing shall consist of a top rail, intermediate rail, toeboard and posts, and shall have a vertical height of approximately

SLOAN v. MILLER BLDG. CORP.

[119 N.C. App. 162 (1995)]

42 inches from upper surface of top rail to floor, platform, runway or ramp level.

29 CFR 1926.500(f)(1) (1994). The placement of ropes around the perimeter of an open-sided floor, as installed by the defendant, is not listed as an alternative to standard railings anywhere in section (f) of CFR 1926.500. At oral argument counsel for defendant admitted defendant knew the ropes placed around the perimeter of the open-sided third floor did not comply with 29 CFR 1926.500.

Defendant noted in its inspection records that standard railings or the equivalent were needed, and F & F specifically requested that defendant provide standard railings or the equivalent for protection of workers on the third floor. Defendant apparently elected, for whatever reason, not to comply with OSHA standard 29 CFR 1926.500. Instead, defendant tied ropes to each post around the perimeter of the third floor knowing the ropes did not meet the requirements of OSHA standard 29 CFR 1926.500(d)(1).

The question presented by this appeal is whether reasonable jurors could find, by a preponderance of the evidence, that the cumulative effect of defendant's actions constituted reckless disregard for the rights and safety of Sloan or, alternatively, constituted intentional failure to follow safety regulations necessary to ensure his safety.

It is well settled that the contributory negligence of a plaintiff does not preclude recovery when defendant's conduct amounts to willful or wanton negligence and is a proximate cause of plaintiff's injuries. *Lewis v. Brunston*, 78 N.C. App. 678, 685, 338 S.E.2d 595, 600 (1986). Wanton negligence has been defined as "an act manifesting a reckless disregard for the rights and safety of others." *Pleasant v. Johnson*, 312 N.C. 710, 714, 325 S.E.2d 244, 248 (1985) (citations omitted). Willful negligence has been defined as "the intentional failure to carry out some duty imposed by law or contract which is necessary to the safety of the person or property to which it is owed." *Id.* (citations omitted). Willful negligence requires only constructive intent. 312 N.C. at 715, 325 S.E.2d at 248. "Constructive intent to injure exists where conduct threatens the safety of others and is so reckless or manifestly indifferent to the consequences that a finding of willfulness and wantonness equivalent in spirit to actual intent is justified. Wanton and reckless negligence gives rise to constructive intent." *Id.* (citations omitted).

SLOAN v. MILLER BLDG. CORP.

[119 N.C. App. 162 (1995)]

Plaintiffs contend evidence of defendant's conduct at the time of the fall *and* evidence of defendant's history of noncompliance with OSHA standards are relevant to the question of whether defendant's conduct rose to the level of willful or wanton negligence. We agree.

We conclude the cumulative effect of defendant's negligence in three different areas creates a genuine issue of material fact sufficient to foreclose the entry of summary judgment. The three areas are: (1) general safety procedures on the project; (2) defendant's failure to comply with OSHA standard 29 CFR 1926.500(d)(1) in the present case; and (3) defendant's history of non-compliance with OSHA standards, including OSHA standard 29 CFR 1926.500(d)(1).

First, plaintiffs' forecast of evidence indicates defendant had little regard for workplace safety. Defendant did not have anyone on site responsible for safety and compliance with either company policy or OSHA regulations. Although defendant designated Bob Becher "supervisor" of the construction site, he apparently worked a crew of men rather than supervise the site. Notably, Becher apparently never performed any type of inspections or held safety meetings, all in violation of company policy.

Second, evidence exists from which a jury could reasonably infer that defendant knew it was in violation of 29 CFR 1926.500. Not only had defendant noted in its inspection records more than one month prior to Sloan's fall that standard railings or their equivalent were needed, but F & F had also asked the defendant to provide standard railings or their equivalent for protection of workers on the third floor. Despite this specific request from its subcontractor, it appears defendant refused to remedy this safety violation. Instead, defendant tied ropes to each post around the perimeter of the third floor which it knew did not satisfy the requirements of OSHA standard 29 CFR 1926.500(d)(1). Plaintiffs' forecast of evidence indicates that defendant's failure to provide standard railings or their equivalent caused F & F to walk off the job.

Third, plaintiffs' forecast of evidence supports the reasonable inference that defendant's indifference to the regulations contributing to Sloan's injuries constituted a pattern of noncompliance and conscious disregard of OSHA standards, including OSHA standard 29 CFR 1926.500(d)(1). Although defendant's disregard of OSHA standards on this and other projects, standing alone, is not tantamount to a finding of wilful or wanton negligence, we believe it remains a relevant factor for the jury to consider giving due regard to the frequency

of alleged violations and the nature and scope of defendant's operations at the time of the infractions. Indeed, apart from the evidence of noncompliance with OSHA regulations and the apparent hostile attitude of company officials regarding their obligation to observe basic safety procedures, plaintiffs have presented evidence that defendant had been cited for failure to install satisfactory standard rails or their equivalent in other projects and, in addition, that another employee was injured during construction of phase I of the same project when he fell from an open-sided floor which lacked the required standard railings or their equivalent.

Based upon plaintiffs' forecast of evidence, we conclude reasonable jurors could differ on the question of whether the conduct of defendant in the present case constituted willful or wanton misconduct sufficient to overcome the bar of Sloan's contributory negligence. Accordingly, we hold summary judgment was improperly granted.

Reversed and remanded.

Judges JOHNSON and JOHN concur.