JOHN ANDREW CLAYTON, III, Plaintiff v. T.H. BRANSON, individually and in his official capacity, THE GREENSBORO POLICE DEPARTMENT and THE CITY OF GREENSBORO, Defendants

No. COA04-884

(Filed 7 June 2005)

## 1. Police Officers— gross negligence—law of the case—willful and wanton conduct

The trial court erred in an action arising out of the transporting of plaintiff from his home to the city magistrate's office in a patrol car by denying defendants' motion for judgment notwithstanding the verdict on plaintiff's claim against defendant police officer for gross negligence or willful and wanton conduct, because: (1) although plaintiff contends the prior ruling in this case became the law of the case which forecloses this issue, the only issue decided by the Court of Appeals in this prior case was whether plaintiff's claims were barred by the defense of governmental immunity and it did not analyze the strength of plaintiff's evidence to determine whether it was strong enough to make out a prima facie case; and (2) plaintiff's claim that defendant drove 30 or 35 miles above the legal speed limit although he knew plaintiff was not wearing a seat belt and that defendant had to brake suddenly and swerve the patrol car to avoid a collision is sufficient to establish simple negligence but falls short of gross negligence.

## 2. Civil Rights; Immunity— § 1983 action—governmental immunity—procedural due process—substantive due process—equal protection

The trial court erred in a 42 U.S.C. § 1983 action arising out of the transporting of plaintiff from his home to the city magistrate's office in a patrol car by denying defendants' motion for judgment notwithstanding the verdict on plaintiff's constitutional claims alleging essentially that the city asserted governmental immunity against him but waived this defense for other tort claimants similarly situated to plaintiff and that defendants' policies and practices for determining whether to settle with tort claims are unconstitutional, because: (1) the city did not waive governmental immunity except to the extent of its purchase of liability insurance since the execution of settlement contracts between a municipality and tort claimants do not constitute waivers of the

affirmative defense of governmental immunity; (2) the city did not violate plaintiff's right to procedural due process when plaintiff failed to show that he has a constitutionally protected property right to recover tort damages from the city by means of a lawsuit or settlement; (3) the city did not violate plaintiff's right to substantive due process when plaintiff has not demonstrated any right to a monetary recovery or settlement with the city and thus cannot possibly have a fundamental right to do so, the factors the city uses to determine whether to offer a monetary settlement bear a rational relationship to legitimate governmental goals, and the city's policies for settling claims against it do not shock the conscience and are neither arbitrary nor unrelated to any conceivable governmental goal; and (4) plaintiff failed to produce evidence that his right to equal protection was violated when he did not present evidence of either the existence of any similarly situated claimant who was treated differently from him or that the treatment by the city was arbitrary or irrational.

Appeal by plaintiff and defendants from order entered 12 February 2004 by Judge Ronald E. Spivey in Guilford County Superior Court. Heard in the Court of Appeals 3 March 2005.

*Greeson Law Offices, by Harold F. Greeson, and Smith James Rowlett & Cohen, by Seth R. Cohen, for plaintiff-appellant and cross-appellee.*

*Smith Moore LLP, by Alan W. Duncan, Allison O. Van Laningham, and Patti W. Ramseur; and Fred T. Hamlet, for defendant-appellee and cross-appellant.*

LEVINSON, Judge.

The parties appeal from post-trial orders entered following a verdict and judgment in favor of plaintiff. We reverse in part and dismiss as moot in part.

This case arises out of events occurring 20 December 1994, when defendant-Officer, T.H. Branson of the Greensboro, North Carolina Police Department, transported plaintiff (John Clayton) from plaintiff's home in Greensboro to the city magistrate's office. On 19 December 1997 plaintiff filed suit against Branson, both individually and in his official capacity, and against defendants Greensboro Police Department and City of Greensboro ("the city"). Plaintiff's complaint was voluntarily dismissed in 1999, but later refiled on 28 April 2000.

The complaint alleged, *inter alia* that: (1) when plaintiff was taken to the magistrate's office, Branson placed him in the back seat of a patrol car equipped with a metal safety screen between the front and back seats; (2) the screen made the back seat too cramped for plaintiff to use a seat belt; (3) on the drive downtown Branson drove 60-70 miles per hour in a 35 mph zone; (4) when another driver stopped on the road in front of them, Branson "slammed on his brakes and jerked his patrol vehicle to the right and then to the left in order to avoid a collision"; (5) Branson's maneuvers to avoid a collision "propelled [plaintiff] forward into the metal screen . . . with great force and violence"; and (6) as a result of this incident, he "[had] undergone three surgeries on his back and continue[d] to suffer excruciating and intractable pain to this day."

On the basis of these and other factual allegations, plaintiff brought claims against (1) Branson in his individual and official capacity for negligence, gross negligence, and willful and wanton misconduct; and (2) the Greensboro Police Department and the City of Greensboro on the theory of *respondeat superior*, and for negligent construction and installation of the metal screen in the patrol car. Plaintiff later amended his complaint to add a third claim against the city (the constitutional claim), seeking damages under 42 U.S.C. § 1983 for violation of his rights to "substantive due process and equal protection of the laws" under the North Carolina and U.S. constitutions. The defendants denied the material allegations of plaintiff's complaint, and raised the defense of governmental immunity. Defendants also moved for summary judgment, which the trial court denied.

Defendants appealed from the denial of their summary judgment motion, and on 15 October 2002 this Court issued its opinion in *Clayton v. Branson*, 153 N.C. App. 488, 570 S.E.2d 253 (2002) (*"Clayton I"*). The Court held that governmental immunity precluded plaintiff's negligence claims against Branson, the Greensboro Police Department, and the city of Greensboro, and reversed the trial court's denial of summary judgment on these claims. The Court also held that governmental immunity did not bar plaintiff's *gross negligence* claim against Branson individually, and upheld the court's denial of summary judgment on that claim. Finally, the Court upheld the trial court's denial of summary judgment on plaintiff's § 1983 constitutional claim, on the basis that "defendants have no defense of governmental immunity against the § 1983 claim." *Clayton I*, 153 N.C. App. at 494, 570 S.E.2d at 257.

CLAYTON v. BRANSON

[170 N.C. App. 438 (2005)]

Plaintiff's surviving claims, against Branson for gross negligence, and against the city for violating his constitutional rights, were tried before a jury in September, 2003. After presentation of evidence, four issues were submitted to the jury:

1. Was the plaintiff, John A. Clayton, III, injured by the willful or wanton negligence of the defendant T.H. Branson?

   Answer: Yes.

2. What amount is the plaintiff, John A. Clayton, III, entitled to recover for personal injury from the defendant T.H. Branson individually?

   Answer: $100.00

3. Did the City of Greensboro, acting under color of law, violate the plaintiff's Constitutional rights to equal protection of the law and due process of law by asserting the defense of governmental immunity in order to deny the plaintiff the right to seek compensation for his damages?

   Answer: Yes.

4. What amount is the plaintiff, John A. Clayton, III, entitled to recover from the defendant City of Greensboro for deprivation of a Constitutional right?

   Answer: $1,500,000.00.

The verdicts were returned on 26 September 2003, and the trial court entered judgment accordingly on 13 October 2003. On 23 October 2003 defendants filed a motion for judgment notwithstanding the verdict (JNOV), or in the alternative for a new trial, remittitur, or an order denying plaintiff prejudgment interest. On 12 February 2004 the trial court entered an order denying defendants' motion for JNOV, and awarding defendants a new trial. The order stated, in pertinent part that:

[T]he Court finds that the verdict returned by the jury is internally irreconcilable, inconsistent and inexplicable, that the award of $1,500,000.00 is excessive and against the greater weight of the evidence, and . . . is inconsistent with the evidence presented[.] . . . A new trial is warranted on all issues, pursuant to [N.C.G.S. § 1A-1,] Rule 59. . . . The Court DENIES defendants' Motion for Judgment Notwithstanding the Verdict . . . [The Court] orders that the defendants' Motion for New Trial . . . [be] GRANTED . . .

CLAYTON v. BRANSON

[170 N.C. App. 438 (2005)]

The parties have appealed from this order; plaintiff appeals the award of a new trial, and defendants cross-appeal the denial of their motions for directed verdict and JNOV.

## Standard of Review

We note initially that the trial court's award of a new trial, as well as its denial of JNOV, are both properly before this Court for appellate review. "When a motion for judgment notwithstanding the verdict is joined with a motion for a new trial, it is the duty of the trial court to rule on both motions." *Graves v. Walston*, 302 N.C. 332, 339, 275 S.E.2d 485, 489 (1981) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 85 L.Ed. 147, 153 (1940)). Thus, the trial court correctly entered an order with respect to both of defendants' motions. In the interests of judicial economy, we first address the court's denial of defendants' motion for JNOV, as the resolution of this issue may obviate the need to review the trial court's award of a new trial. *See Branch v. High Rock Realty, Inc.*, 151 N.C. App. 244, 252, 565 S.E.2d 248, 253 (2002) ("Since we affirm the trial court's order granting defendants' motion for [JNOV], it is unnecessary for us to address plaintiff's arguments regarding the trial court's conditional grant of a new trial."), *disc. review denied*, 356 N.C. 667, 576 S.E.2d 330 (2003).

When considering a motion for JNOV:

all the evidence must be considered in the light most favorable to the nonmoving party. The nonmovant is given the benefit of every reasonable inference . . . from the evidence and all contradictions are resolved in the nonmovant's favor. If there is more than a scintilla of evidence supporting each element of the nonmovant's case, the motion for . . . judgment notwithstanding the verdict should be denied.

*Ace Chemical Corp. v. DSI Transports, Inc.*, 115 N.C. App. 237, 242, 446 S.E.2d 100, 103 (1994) (citations omitted).

## Gross Negligence Claim

[1] Defendants argue that the trial court erred by denying their motion for JNOV on plaintiff's claim against Branson for gross negligence or willful and wanton conduct. We agree.

"Aside from allegations of wanton conduct, a claim for gross negligence requires that plaintiff plead facts on each of the elements of negligence, including duty, causation, proximate cause, and damages." *Toomer v. Garrett*, 155 N.C. App. 462, 482, 574 S.E.2d 76, 92

(2002) (citing *Martishius v. Carolco Studios, Inc.*, 355 N.C. 465, 562 S.E.2d 887 (2002)), *disc. review denied*, 357 N.C. 66, 579 S.E.2d 576 (2003). In the instant case, the dispositive issue is whether there was sufficient evidence of gross negligence.

Preliminarily, we reject plaintiff's assertion that review of this issue is foreclosed by this Court's opinion in *Clayton I*. Plaintiff contends that in *Clayton I* this Court "decide[d] whether Plaintiff's forecast of evidence on the issue of willful or wanton negligence against Defendant Branson was sufficient" and that this ruling became the "law of the case." We disagree.

Regarding the doctrine of "law of the case":

"As a general rule, when an appellate court passes on questions and remands the case for further proceedings to the trial court, the questions therein actually presented and necessarily involved in determining the case, and the decision on those questions become the law of the case." The law of the case doctrine, however, only applies to points actually presented and necessary for the determination of the case and not to dicta.

*Kanipe v. Lane Upholstery*, 151 N.C. App. 478, 484-85, 566 S.E.2d 167, 171 (2002) (quoting *Creech v. Melnik*, 147 N.C. App. 471, 473, 556 S.E.2d 587, 589 (2001) (citations omitted)).

*Clayton I* presented this Court with defendants' appeal from the trial court's denial of their motion for summary judgment. "Generally, a denial of summary judgment, because it does not dispose of the case, 'is an interlocutory order from which there is ordinarily no right of appeal.'" *Neill Grading & Constr. Co., Inc. v. Lingafelt*, 168 N.C. App. 36, 41, 606 S.E.2d 734, 738 (2005) (quoting *Liggett Group v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677 (1993)). In *Clayton I*, the Court applied this rule in delineating its scope of review:

The denial of a motion for summary judgment is interlocutory and is not generally appealable. Where the summary judgment motion was based on a substantial claim of immunity, a party may immediately appeal the denial of summary judgment. Defendants assert a claim of sovereign immunity. **We address only the issue of whether these claims are barred by sovereign immunity**.

*Clayton I*, 153 N.C. App. at 491-92, 570 S.E.2d at 256 (citing *Slade v. Vernon*, 110 N.C. App. 422, 425, 429 S.E.2d 744, 745-46 (1993))

(emphasis added). The Court then held that governmental immunity was unavailable as a defense to claims of gross negligence or willful misconduct outside the scope of Branson's duties, and "affirm[ed] the trial court's denial of summary judgment against Branson in his individual capacity for actions allegedly outside the scope of his duties and which go beyond mere negligence." *Id.* at 493, 570 S.E.2d at 256. We conclude that the only issue decided by this Court in *Clayton I* was whether plaintiff's claims were barred by the defense of governmental immunity.

Additionally, the instant case is easily distinguished from *Sloan v. Miller Bldg. Corp.*, 119 N.C. App. 162, 458 S.E.2d 30 (1995) (*Sloan I*), and *Sloan v. Miller Bldg. Corp.*, 128 N.C. App. 37, 493 S.E.2d 460 (1997) (*Sloan II*), cited by plaintiff. In *Sloan I*, this Court undertook an extensive review of the evidence and assessed its strength, before concluding that "reasonable jurors could differ on the question of whether the conduct of defendant in the present case constituted willful or wanton misconduct[.]" *Sloan I*, 119 N.C. App. at 169, 458 S.E.2d at 34. Consequently, the Court in *Sloan II* concluded that it was bound by *Sloan I's* holding on the sufficiency of plaintiff's evidence of gross negligence. However, in *Clayton I*, the Court did not analyze the strength of plaintiff's evidence to determine whether it was strong enough to make out a *prima facie* case. To the contrary, the Court expressly held that the issue was interlocutory.

We next review the record to "determine whether there is sufficient evidence which, considered in the light most favorable to the plaintiff, would establish facts sufficient to constitute willful and wanton negligence. If the facts are such that reasonable persons could differ as to whether the evidence amounts to willful or wanton conduct, the question is properly preserved for the jury." *Wilburn v. Honeycutt*, 135 N.C. App. 373, 375-76, 519 S.E.2d 774, 776 (1999) (citing *Siders v. Gibbs*, 39 N.C. App. 183, 186, 249 S.E.2d 858, 860 (1978)). However, if the evidence taken in the light most favorable to the plaintiff fails to establish "gross negligence on the part of Officer [Branson], an essential element of [plaintiff's] claim is nonexistent and defendants are entitled to judgment as a matter of law." *Norris v. Zambito*, 135 N.C. App. 288, 296, 520 S.E.2d 113, 118 (1999).

Although Branson is a law enforcement officer, resolution of the issue of gross negligence is not governed by N.C.G.S. § 20-145 (2003), which addresses emergency situations such as an officer's high speed chase of an escaping felon. In the instant case, there is no indication that Branson was involved in any emergency. Also, the issue here is

gross negligence and, even under N.C.G.S. § 20-145, an officer is liable for his gross negligence.

"Our Supreme Court has defined 'gross negligence' as 'wanton conduct done with conscious or reckless disregard for the rights and safety of others.' " *Bray v. N.C. Dep't of Crime Control & Pub. Safety*, 151 N.C. App. 281, 284, 564 S.E.2d 910, 912 (2002) (quoting *Bullins v. Schmidt*, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988)).

> "[T]he difference between ordinary negligence and gross negligence is substantial. Negligence, a failure to use due care, *be it slight or extreme*, connotes inadvertence. . . . ." *Hinson* [*v. Dawson*], 244 N.C. [23, 28], 92 S.E.2d [393, 396 (1956)] (emphasis added). . . . [G]ross negligence [occurs] when the *act* is done purposely and with . . . a *conscious* disregard of the safety of others. . . . In the area of motor vehicle negligence, . . . the gross negligence issue has been confined to circumstances where . . . (1) defendant is intoxicated; (2) defendant is driving at excessive speeds; or (3) defendant is engaged in a racing competition[.]

*Yancey v. Lea*, 354 N.C. 48, 53-54, 550 S.E.2d 155, 158 (2001) (additional citations omitted). Our appellate courts have generally restricted their findings of gross negligence to cases with evidence of one or more of the factors mentioned in *Yancey*, or equivalent indicia of conduct that is "willful, wanton, or done with reckless indifference." *Sawyer v. Food Lion, Inc.*, 144 N.C. App. 398, 403, 549 S.E.2d 867, 870 (2001). *See, e.g.*, *Brewer v. Harris*, 279 N.C. 288, 182 S.E.2d 345 (1971) (defendant had .31 blood alcohol level and was driving "well over" 100 mph, despite entreaties by his passengers to slow down); *Headley v. Williams*, 162 N.C. App. 300, 590 S.E.2d 443 (defendant crossed center line, causing collision: evidence showed defendant had empty beer cans in her car and was not wearing her eyeglasses), *disc. review denied*, 358 N.C. 375, 598 S.E.2d 136 (2004); *Eatmon v. Andrews*, 161 N.C. App. 536, 588 S.E.2d 564 (2003) (defendant causes collision after drinking, then flees scene to avoid taking Breathalyzer test); *Byrd v. Adams*, 152 N.C. App. 460, 568 S.E.2d 640 (2002) (defendant consumed alcohol and prescription drugs, fell asleep while driving on interstate highway, causing collision); *Siders v. Gibbs*, 39 N.C. App. 183, 249 S.E.2d 858 (1978) (while extremely intoxicated and driving at speeds up to 80 mph, defendant crossed center line, causing collision). Thus, "[o]rdinary negligence has as its basis that a person charged with negligent conduct should have known the probable consequences of his act. Wanton and will-

ful negligence rests on the assumption that he knew the probable consequences, but was recklessly, wantonly or intentionally indifferent to the results." *Wagoner v. North Carolina R. Co.*, 238 N.C. 162, 168, 77 S.E.2d 701, 706 (1953) (citation omitted).

In the instant case, the evidence, taken in the light most favorable to plaintiff, tends to show that: (1) Branson directed plaintiff to sit in the back of the patrol car, even after plaintiff told Branson the back seat was too cramped to use a seat belt; (2) on the way to the magistrate's office, Branson exceeded the 35 mph speed limit and drove at speeds over 60 mph; and (3) when another car stopped in front of Branson's patrol car, Branson avoided a collision by braking abruptly and swerving the car from side to side. However, there was no evidence that, for example, Branson wove across lanes of travel, lost control of the vehicle, or struck any object or person with the patrol car. There was no evidence that Branson was intoxicated, or was racing another vehicle. Although he drove above the legal speed limit, Branson successfully avoided a collision without leaving the roadway or causing other vehicles to collide. Also, there was no evidence of unusual weather or road conditions.

Plaintiff's claim essentially rests upon evidence that Branson drove 30 or 35 miles above the legal speed limit although he knew plaintiff was not wearing a seat belt, and that he had to brake suddenly and swerve the car to avoid a collision. This evidence is sufficient to establish simple negligence. *See Bray v. N.C. Dep't of Crime Control & Pub. Safety*, 151 N.C. App. 281, 564 S.E.2d 910 (no gross negligence where officer drove over 80 mph, crossed center line, and lost control of vehicle); *Roary v. Bolton*, 150 N.C. App. 193, 563 S.E.2d 21 (2002) (evidence that defendant drove at speeds up to 120 mph in 45 mph zone; case tried on simple negligence). Plaintiff cites no precedent finding gross negligence under circumstances similar to those in the present case, and we find none. We also note that in the order on appeal, the trial court explained that it had been "inclined to find as a matter of law that Officer Branson's conduct could not amount to willful and wanton negligence" but nevertheless declined to do so. And, during a pretrial hearing, plaintiff's attorney acknowledged that "most people are going to think, well, big deal, so he went fast and he swerved. So what?"

We conclude that the evidence, although sufficient to establish negligence, falls far short of the threshold of gross negligence. We further conclude that the trial court erred by denying defendants' motion for JNOV on plaintiff's gross negligence claim against Branson.

CLAYTON v. BRANSON

[170 N.C. App. 438 (2005)]

Accordingly, the trial court's denial of defendants' motion for JNOV must be reversed.

## Constitutional Claim

[2] We next address the trial court's denial of defendants' motion for JNOV on plaintiff's constitutional claims. Plaintiff's complaint alleged, in pertinent part, that:

33A. . . . The City of Greensboro . . . has treated Plaintiff arbitrarily and capriciously by asserting governmental immunity as to Plaintiff, when the Defendant City had a custom or policy of waiving governmental immunity as to certain other claimant[s], similarly situated to Plaintiff, thereby denying this Plaintiff substantive due process and equal protection of the law in violation of both the North Carolina and United States constitutions and of 42 U.S.C. § 1983.

33B. . . . [Defendants] had a custom and policy of waiving governmental immunity and paying claims for damages to tort claimants similarly situated to this Plaintiff while asserting immunity and refusing to pay this Plaintiff's claims, thereby subjecting Plaintiff to the deprivation of rights, privileges or immunities secured to him by the Constitution and laws of the United States of America.

33C. Defendants' acts in asserting governmental immunity to avoid payment of Plaintiff's claim while waiving governmental immunity with respect to the claims of others similarly situated to Plaintiff constitutes arbitrary and capricious treatment of Plaintiff in violation of Plaintiff's rights to substantive due process and equal protection of the laws under both the Constitution of the United States and the Constitution of the State of North Carolina[.] . . .

Reduced to its essentials, plaintiff alleges that: (1) the city asserted governmental immunity against him, but "waived" governmental immunity for other tort claimants "similarly situated" to plaintiff; and (2) defendants' policies and practices for determining whether to settle with tort claimants are unconstitutional. Plaintiff sought damages under 42 U.S.C. § 1983 for violation of his constitutional rights.

## Scope of Review

Preliminarily, we address plaintiff's characterization of the issues before us. Plaintiff asserts that the city's liability is conclusively

established, leaving the dollar amount of his damages as the only issue before us. We disagree.

Plaintiff first contends that, on appeal, defendants have "conceded" liability and admitted violating plaintiff's constitutional rights. However, although defendants' appellate brief focuses on the issue of damages, defendants' arguments are consistently couched in terms of the city's "**alleged** assertion of immunity" or its "**alleged** constitutional violation." (emphasis added). Defendants nowhere admit to or concede any violation of plaintiff's constitutional rights.

Plaintiff also argues that the "narrow issue" of his entitlement to "substantial damages" was "raised and decided" in *Dobrowolska v. Wall,* 138 N.C. App. 1, 530 S.E.2d 590 (2000). *Dobrowolska* dealt with a different plaintiff in a different factual and evidentiary context. We are bound by this Court's holdings on all **legal** issues that were necessary to the decision in *Dobrowolska, see In re: Appeal from Civil Penalty,* 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). However, our determination of what **facts** are supported by this plaintiff's evidence, and our analysis of the nature and extent of that evidence, is not governed by *Dobrowolska.* Since this evaluation of the evidence is a necessary part of our legal ruling, the issue of the city's liability for constitutional violations is properly part of our review of the trial court's denial of defendants' motion for JNOV in plaintiff's constitutional claim.

## Governmental Immunity and Waiver of Immunity

The premise of plaintiff's constitutional claims is that the city asserted the affirmative defense of governmental immunity in response to his lawsuit, but has "waived" governmental immunity for other claimants by executing settlement agreements with them. Accordingly, we first review the legal principles governing governmental immunity.

"Under the doctrine of governmental immunity, a county is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity." *Meyer v. Walls,* 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997) (citations omitted). Consequently, "municipalities in North Carolina are immune from liability for their negligent acts arising out of governmental activities unless the municipality waives such immunity by purchasing liability insurance." *Anderson v. Town of Andrews,* 127 N.C. App. 599, 600, 492 S.E.2d 385, 386 (1997). Governmental immunity applies to claims

CLAYTON v. BRANSON

[170 N.C. App. 438 (2005)]

alleging negligence by a law enforcement officer while he was engaged in official business. *See Galligan v. Town of Chapel Hill*, 276 N.C. 172, 175, 171 S.E.2d 427, 429 (1970) ("A police officer in the performance of his duties is engaged in a governmental function.").

The city's authority to waive governmental immunity is governed by N.C.G.S. § 160A-485(a) (2003), which provides in relevant part:

Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance. . . . Immunity shall be waived only to the extent that the city is indemnified by the insurance contract from tort liability. . . . [N]o city shall be deemed to have waived its tort immunity by any action other than the purchase of liability insurance.

*Clayton I* upheld the trial court's conclusion that the city "has purchased liability insurance for liability of more than $2 million but less than $4 million and has therefore waived its governmental immunity as to liability falling within that range, but has not waived its governmental immunity for amounts of liability less than $2 million dollars by the purchase of liability insurance." *Clayton I*, 153 N.C. App. at 491, 570 S.E.2d at 255. Plaintiff does not dispute the accuracy of this conclusion as regards the amount of liability insurance purchased by the city. Plaintiff contends, however, that by executing settlement contracts with certain claimants, the city waived the defense of governmental immunity altogether. We disagree.

First, as a complete bar to liability, governmental immunity constitutes an affirmative defense. *See Roberts v. Heffner*, 51 N.C. App. 646, 649, 277 S.E.2d 446, 448 (1981) ("A defense which introduces new matter in an attempt to avoid [plaintiff's claim], regardless of the truth or falsity of the allegations in the [complaint], is an affirmative defense."). As a **defense,** governmental immunity **cannot**, by definition, be raised **until** there is a lawsuit to defend against. Affirmative defenses are raised by a party's responsive pleading. N.C.G.S. § 1A-1, Rule 8(c) (2003) ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . [any] affirmative defense."). *See, e.g.*, *Fowler v. Valencourt*, 334 N.C. 345, 346, 435 S.E.2d 530, 531 (1993) ("Defendants' answer . . . asserted the affirmative defense of governmental immunity on the part of the City[.]").

Secondly, "N.C.G.S. § 160A-485 provides that the only way a city may waive its governmental immunity is by the purchase of liability insurance." *Blackwelder v. City of Winston-Salem*, 332 N.C. 319, 324,

420 S.E.2d 432, 435 (1992). In *Blackwelder*, plaintiff argued that defendant City violated his constitutional rights by forming a corporation (RAMCO) to resolve claims against the City for less than $1,000,000. The North Carolina Supreme Court held that, because RAMCO did not constitute liability insurance, the city's use of RAMCO to settle with certain claimants did not waive the city's governmental immunity:

> [P]laintiff contends that the City has violated the Equal Protection Clause of the Fourteenth Amendment . . . because the City, through RAMCO, can pick and choose what claims it will pay, thus depriving the plaintiff of the equal protection of the law. . . . If we were to hold the City has acted unconstitutionally . . . it would not mean the City had waived its governmental immunity.

*Blackwelder*, 332 N.C. at 325, 420 S.E.2d at 436-37. The logic of *Blackwelder's* holding, that a municipality's voluntary settlement with a claimant is not a waiver of governmental immunity, becomes clear when we consider the nature of settlement agreements.

A settlement agreement is a contract resolving a dispute without a trial. " 'Whether denominated accord and satisfaction or compromise and settlement, the executed agreement terminating or purporting to terminate a controversy is a contract, to be interpreted and tested by established rules relating to contracts.' " *Bolton Corp. v. T. A. Loving Co.*, 317 N.C. 623, 628, 347 S.E.2d 369, 372 (1986) (quoting *Casualty Co. v. Teer Co.*, 250 N.C. 547, 550, 109 S.E.2d 171, 173 (1959)).

"A waiver is a voluntary and intentional relinquishment of a known right or benefit." *Adder v. Holman & Moody, Inc.*, 288 N.C. 484, 492, 219 S.E.2d 190, 195 (1975). Defendants assert that "[i]n settling tort claims, neither . . . the adjuster, nor the Legal Department waived governmental immunity." Plaintiff has offered no evidence of a settlement agreement whose terms contradict the defendants' contention. A waiver of governmental immunity would mean the city allowing a claimant to try his case, exposing itself to liability, and paying damages in an amount determined by a judge or jury. Plaintiff herein does not allege that the city has allowed any tort claimants to do so. In fact, plaintiff argues that the city's practice of making settlement offers in some cases is unfair precisely **because** the claimant must "take it or leave it" without the option of going to trial.

For the reasons discussed above, we conclude that the execution of settlement contracts between a municipality and tort claimants do not constitute waivers of the affirmative defense of governmental immunity. Accordingly, the city did not waive governmental immunity except to the extent of its purchase of liability insurance.

## Due Process and Equal Protection

The record suggests that the city denied plaintiff's claim and did not offer him a monetary settlement, although it has executed settlement contracts with certain other tort claimants. Plaintiff alleges that this violated his constitutional rights to substantive and procedural due process and equal protection as guaranteed by the U.S. Const. amend. XIV, and by the N.C. Const., Art. I., § 19. We disagree.

The Fourteenth Amendment states that the government shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Our state courts generally treat the corresponding section of the N.C. Constitution as the functional equivalent of its federal counterpart:

> "The term 'law of the land' as used in Article I, Section 19, of the Constitution of North Carolina, is synonymous with 'due process of law' as used in the Fourteenth Amendment to the Federal Constitution."

*Rhyne v. K-Mart Corp.*, 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004) (quoting *In re Moore*, 289 N.C. 95, 98, 221 S.E.2d 307, 309 (1976)). Plaintiff properly bases his claim for damages for alleged 14th Amendment violations by the city on the provisions of 42 U.S.C. § 1983:

> Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies. . . . [L]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.

*Monell v. Department of Social Servs.*, 436 U.S. 658, 690, 56 L. Ed. 2d 611, 635 (1978). Thus, "unlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983. In short, a municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom

caused the constitutional injury." *Leatherman v. Tarrant County*, 507 U.S. 163, 166, 122 L. Ed. 2d 517, 523 (1993).

However, § 1983 does not <u>create</u> constitutional rights, and is available only to enforce constitutional rights whose source may be identified:

> We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983. Section 1983 provides a remedy only for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States.

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 283, 153 L. Ed. 2d 309, 321 (2002). "42 U. S. C. § 1983 . . . is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144, n.3, 61 L. Ed. 2d 433, 442 , n.3 (1979). Accordingly, identification of a constitutionally protected right is a prerequisite of plaintiff's right to sue under § 1983. *See, e.g., Camastro v. City of Wheeling*, 49 F. Supp. 2d 500, 505 (N.D.W.V. 1998) ("plaintiff's claim for a violation of 42 U.S.C. § 1983 must be dismissed because plaintiff has no property right in a zoning variance; thus, plaintiff cannot state a claim for relief on the allegation that he has been deprived of a property right without due process of law"); *Ware v. Fort*, 124 N.C. App. 613, 616-17, 478 S.E.2d 218, 220-21 (1996) ("[P]laintiff rests his § 1983 claim on notions of substantive and procedural due process. . . . This argument fails because plaintiff simply had no property right in the position[.]").

In the instant case, determination of the constitutionality of the city's policies and practices for settling with tort claimants requires us to decide whether the city violated plaintiff's constitutional right either to (1) procedural due process; (2) substantive due process; or (3) equal protection.

## Procedural Due Process

"Procedural due process restricts governmental actions and decisions which 'deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.' " *Peace v. Employment Sec. Comm'n*, 349 N.C. 315, 321, 507 S.E.2d 272, 277 (1998) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332, 47 L. Ed. 2d 18, 31 (1976)). However:

A [plaintiff] must initially demonstrate a "property" interest . . . in order to invoke procedural due process protection. State law determines whether an individual [plaintiff] does or does not possess a constitutionally protected "property" interest[.]

*Peace,* 349 N.C. at 321, 507 S.E.2d at 278 (citations omitted). Thus, "[n]ot every property interest requires procedural due process. A protected property interest arises when one has a legitimate claim of entitlement as decided by reference to state law." *Dyer v. Bradshaw,* 54 N.C. App. 136, 139, 282 S.E.2d 548, 550 (1981) (citing *Bishop v. Wood,* 426 U.S. 341, 48 L. Ed. 2d 684 (1976)). The leading United States Supreme Court case on this issue held that:

[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . . Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561 (1972).

Plaintiff herein claims a constitutionally protected property interest in his right to recover damages from the city. A claimant can recover damages for personal injury either in a lawsuit or by means of a settlement between the parties; we will consider both of these possibilities.

As discussed above, absent a waiver of governmental immunity by the purchase of liability insurance, plaintiff is barred from maintaining a lawsuit against the city. As plaintiff has no right to maintain a suit against the city, under the facts set forth in this opinion, he cannot have a "constitutionally protected" property right to do so.

We next determine whether plaintiff produced evidence of a right, or "legitimate claim of entitlement" to a settlement offer from the city. "Such an interest can arise from or be created by statute, ordinance, or express or implied contract, the scope of which must be determined with reference to state law." *Presnell v. Pell,* 298 N.C. 715, 723, 260 S.E.2d 611, 616 (1979) (citing *Bishop,* 426 U.S. 341, 48 L. Ed. 2d 684) (other citation omitted). In the instant case, plaintiff

identifies no statute, ordinance, or other source of any right or entitlement to recover damages from the city.

Moreover, it is undisputed that settlement offers, if any, are in the discretion of the city. Simple logic dictates that a party cannot have a right or entitlement to a benefit whose dispensation rests entirely in the discretion of the city:

> If an official has unconstrained discretion to deny the benefit, a prospective recipient of that benefit can establish no more than a "unilateral expectation" to it. . . . Therefore, in order to assert a property interest . . . [plaintiff] must point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the City to rescind the benefit.

*Med Corp., Inc. v. City of Lima,* 296 F.3d 404, 409-10 (6th Cir. 2002) (citing *Board of Regents v. Roth,* 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561 (1972)). Accordingly, the city's discretion to choose whether to settle with a claimant is not a constitutional violation of procedural due process; instead, it is some evidence that a tort claimant may not have a constitutionally protected right to a settlement offer from a municipality in North Carolina. In this regard, settlement decisions are analogous to discretionary employment decisions:

> To assess a candidate's accomplishments . . . necessarily involves subjective judgment and the substantial exercise of discretion. The regulations and guidelines [for doing so] in no way create the type of clear, nondiscretionary "entitlement" . . . that the Supreme Court has found to be necessary to establish a constitutionally protected property interest.

*Harel v. Rutgers,* 5 F. Supp. 2d 246, 273 (D.C.N.J. 1998).

In sum, plaintiff herein identifies no basis or source for a "property right" to a monetary settlement with the city. Further, on this record, the city's decisions about offering settlement monies are discretionary, and thus cannot give rise to more than an "unilateral expectation" of relief. Consequently, we conclude that plaintiff failed to produce evidence that he has a constitutionally protected property right to recover tort damages from the city by means of a lawsuit or a settlement.

Because plaintiff herein failed to produce evidence of a right to recover damages from the city, the issue of procedural safeguards is not presented. "Where there is no property interest, there is no en-

titlement to constitutional protection." *State ex rel. Utilities Comm'n v. Carolina Util. Customers Ass'n*, 336 N.C. 657, 678, 446 S.E.2d 332, 344 (1994) (citing *Huang v. Board of Governors of University of North Carolina*, 902 F.2d 1134 (4th Cir. 1990)).

For the reasons discussed above, we conclude that the city did not violate plaintiff's right to procedural due process.

## Substantive Due Process

Plaintiff also claims that the city's policies and practices for settling claims against it violate his right to substantive due process. We disagree.

" 'Substantive due process' protection prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.' " *State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 282 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172, 96 L. Ed. 183, 190 (1952), and *Palko v. Connecticut*, 302 U.S. 319, 325, 82 L. Ed. 288, 292 (1937), *overruled on other grounds by Benton v. Maryland*, 395 U.S. 784, 23 L. Ed. 2d 707 (1969)). "Substantive due process is a guaranty against arbitrary legislation, demanding that the law shall not be unreasonable, arbitrary or capricious, and that the law be substantially related to the valid object sought to be obtained." *State v. Joyner*, 286 N.C. 366, 371, 211 S.E.2d 320, 323 (1975). However:

> "[u]nless legislation involves a suspect classification or impinges upon fundamental personal rights," . . . the mere rationality standard applies and the law in question will be upheld if it has "any conceivable rational basis." . . . Moreover, "[t]he deference afforded to the government under the rational basis test is so deferential that . . . a court can uphold the regulation if the court can *envision* some rational basis for the classification."

*Huntington Props., LLC v. Currituck Cty.*, 153 N.C. App. 218, 229-30 and 231, 569 S.E.2d 695, 703 and 704 (2002) (quoting *Treants Enterprises, Inc. v. Onslow County*, 83 N.C. App. 345, 351, 350 S.E.2d 365, 369 (1986), and *Guerra v. Scruggs*, 942 F.2d 270, 279 (4th Cir. 1991)).

As discussed above, the plaintiff has not demonstrated any right to a monetary recovery or settlement with the city, and thus cannot possibly have a **fundamental** right to do so. Nor is any other right implicated that might be "fundamental." We therefore apply the

"rational relationship" test to the city's policies. The evidence at trial establishes that the city's decisions about whether to offer a monetary settlement to a tort claimant are generally based on the following factors:

a. Whether there was a negligent act by an employee of the City;

b. Whether there was an intentional tort by a City employee;

c. What, if any, defenses are available for the City, including the defenses of governmental immunity and contributory negligence;

d. Whether any defenses, including governmental immunity, are available for the employee in his individual capacity;

e. Whether the employee of the City violated any departmental regulation;

f. The cost of defending the case;

g. Goodwill on behalf of the citizens; and

h. The best use of taxpayer's money in a cost effective manner.

We conclude that each of these factors, standing alone or considered collectively, clearly bear a rational relationship to legitimate governmental goals.

We further conclude that the city's policies for settling claims against it do not "shock the conscience," *Rochin*, 342 U.S. at 172, 96 L. Ed. at 190, and are neither arbitrary nor unrelated to any conceivable governmental goal. We therefore conclude that the plaintiff's right to substantive due process is not violated by the city's policies for determining whether to offer a settlement to a tort claimant.

## Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." The United States Supreme Court has "explained that 'the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.' " *Willowbrook v. Olech*, 528 U.S. 562, 564, 145 L. Ed. 2d 1060, 1063 (2000) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445, 67 L. Ed. 340, 342 (1923)).

Thus, while the principle of substantive due process protects citizens from arbitrary or irrational laws and government policies, the right to equal protection guards against the government's use of invidious classification schemes. However:

> **most** laws differentiate in some fashion between classes of persons. The Equal Protection Clause . . . simply keeps governmental decisionmakers from treating differently persons who **are in all relevant respects alike**.

*Nordlinger v. Hahn*, 505 U.S. 1, 10, 120 L. Ed. 2d 1, 12, (1992) (citing *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 64 L. Ed. 989, 990 (1920)) (emphasis added). Our state courts apply the same standard to equal protection claims brought under the North Carolina constitution:

> When resolving challenged classifications under the equal protection clause of the State Constitution, this Court applies the same test used by federal courts under the parallel clause in the United States Constitution.

*Bacon v. Lee*, 353 N.C. 696, 719, n.11, 549 S.E.2d 840, 856, n.11 (2001).

In the instant case, plaintiff does not identify any "classification" upon which he was denied equal protection. Also, plaintiff does not allege that the city's decisions about settlement offers included the use of any inherently suspect criteria, such as race, religion, or disability status. Instead, plaintiff "attempts to save [his] equal protection claim by arguing that [he] was treated differently from other 'similarly situated' persons[.]" *Tri-County Paving, Inc. v. Ashe County*, 281 F.3d 430, 439 (4th Cir. 2002). As *Ashe* held further:

> The Supreme Court [has] made clear . . . that a party can bring an equal protection claim by alleging it has 'been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'

*Id.* (quoting *Village of Willowbrook*, 528 U.S. at 564, 145 L. Ed. 2d at 1063 (2000)).

For purposes of equal protection analysis, "persons who are in all relevant respects alike" are "similarly situated." *Nordlinger*, 505 U.S. at 10, 120 L. Ed. 2d at 12. We therefore consider whether plaintiff produced evidence that the city arbitrarily treated him differently from "similarly situated" claimants by offering monetary settlements to

other claimants whose cases were "in all relevant respects" the same as plaintiff's, but not offering a settlement to plaintiff.

To support his claim, plaintiff submitted a list of more than 400 incidents occurring in the city between 1992 and 1995. All of these involved a claim for damages caused by a city employee who, at the time of the incident, was operating a vehicle owned by the city and was engaged in a governmental function. For each incident, the list identifies only: (1) the department involved, e.g., "City Sanitation truck" or "Greensboro police officer"; (2) the general nature of the incident, e.g., "allegedly struck claimant's parked vehicle" or "allegedly damaged claimant's mailbox"; and (3) the outcome, e.g., "settled without a lawsuit for X amount" or "claim was denied as there was no negligence."

Plaintiff's claim essentially suggests that any two claimants are "similarly situated" as long as their claims both involve damage caused by a city employee's operation of a city vehicle. But plaintiff offers no support for the premise that the city, or any other party, would ever make decisions about the proper response to a claim based only on bare-bones information such as "a garbage truck allegedly struck a parked car." Indeed, the city's own list of factors for making such determinations is far more nuanced and detailed than that.

Moreover, plaintiff's list provides no information about, e.g.,: the claimants' specific factual allegations; the results of any investigation or physical tests that were performed; the availability of credible witnesses for either the claimants or the city employees; whether the claimants were able to document their damages; personal data that could be relevant in equal protection discrimination claims, such as the claimants' age, race, or religion; the availability of defenses such as contributory negligence; the city investigator's subjective opinion on the credibility of the claimants or the city employees; the violations of traffic or criminal laws by either the city employees or the claimants; settlement demands or offers between the parties; or any other factors that might have played a part in the city's decision about whether to offer to settle with the claimants. Without this type of information, no court or jury can possibly determine whether two claimants were "similarly situated" with respect to all relevant factors in a settlement decision, or whether the city used an invidious classification scheme in its decisions.

Furthermore, discretionary decisions such as whether to make a settlement offer necessarily implicate a host of subjective factors

rightfully reserved for city administrators and elected officials, and it is almost inevitable that any two claimants will be dissimilar as regards one or more factors relevant to settlement offers. Thus, as a practical matter, it would be exceedingly difficult for a plaintiff to show disparate treatment of "similarly situated" claimants absent evidence of reliance on an "inherently suspect criteria."

We conclude that the plaintiff did not present evidence of either (1) the existence of any "similarly situated" claimants who were treated differently from him, or (2) treatment by the city that was arbitrary or irrational. Accordingly, we conclude that plaintiff failed to produce evidence that his right to equal protection was violated.

For the reasons discussed above, we conclude the plaintiff failed to produce evidence that the city's policies or practices for settling with tort claimants violated his constitutional rights to either substantive or procedural due process or to equal protection.

We note that this conclusion does not contradict the holding of *Dobrowolska v. Wall*, 138 N.C. App. 1, 530 S.E.2d 590 (2000). Regarding procedural due process, *Dobrowolska* correctly noted that " '[o]nly after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process.' " *Dobrowolska*, 138 N.C. App. at 11-12, 530 S.E.2d at 598 (quoting *American Mfrs. Mut. Ins. v. Sullivan*, 526 U.S. 40, 59, 143 L. Ed. 2d 130, 149 (1999)). The Court cited several rights whose source can easily be identified in the relevant enabling legislation (*e.g.*, the right of a qualified applicant to welfare benefits, or the right of a criminal defendant to appeal from conviction). The Court also observed that the generalized right "implicated" by the case was the right "to recover damages," which is, of course, true of **all** tort claims. The *Dobrowolska* Court further held that, **if** plaintiff were able to show a constitutionally protected property right to recover damages from a municipality, the city's enumerated factors would not provide the structure and predictability required for procedural due process.

Significantly, however, *Dobrowolska* does not consider, analyze, or determine whether the plaintiff (1) had produced evidence of a constitutionally protected right to recover damages from a North Carolina municipality; (2) had identified a statutory or other legal source of such a right; or (3) had offered evidence of an entitlement, as opposed to a "unilateral expectation," of a settlement offer from the city.

Nor did *Dobrowolska* hold that the policies and factors that the city used to make settlement determinations were inherently irrational, that they had no relationship to a valid governmental goal, or that they otherwise violated plaintiff's right to substantive due process.

Finally, as regards the right to equal protection, we note that the list of other claims that plaintiff submitted in the instant case was also a part of the evidence offered by the plaintiff in *Dobrowolska*. However, the *Dobrowolska* Court did not hold that this list, without more, automatically constituted *prima facie* evidence that plaintiff's right to equal protection had been violated. Further, in *Dobrowolska*, the Court reviewed a different evidentiary record and assessed it in relation to a different claimant. The evidence found in this record does not demonstrate that **this** plaintiff was treated differently from similarly situated claimants.

Given that a city can assert governmental immunity as an affirmative defense to tort claims, cities admittedly have greater bargaining power than claimants when negotiating a settlement. However, it is axiomatic that any change to the law in this area must come from the legislature, not the courts. "The plaintiff asks us either to abolish governmental immunity or to change the way it is applied. . . . [A]ny change in this doctrine should come from the General Assembly." *Blackwelder*, 332 N.C. at 324, 420 S.E.2d at 435-36.

We conclude that the trial court erred by denying defendants' motion for JNOV, on both the claim of gross negligence and also the constitutional claim. Our conclusion renders moot the issues pertaining to the trial court's award of a new trial. *See, e.g., Snider v. Dickens*, 293 N.C. 356, 359, 237 S.E.2d 832, 834 (1977) ("defendant's motion for judgment notwithstanding the verdict . . . should have been granted. Our decision on this issue renders it unnecessary for us to consider . . . [the trial court's] failure to grant [a] new trial"). We remand for entry of JNOV on both claims, and dismiss plaintiff's appeal as moot.

Reversed in part and dismissed in part.

Judges TIMMONS-GOODSON and BRYANT concur.