KRUEGER v. N.C. CRIMINAL JUSTICE EDUC. & TRAINING STANDARDS COMM'N

[230 N.C. App. 293 (2013)]

JAY EDUARD KRUEGER, Petitioner
v.
NORTH CAROLINA CRIMINAL JUSTICE EDUCATION AND
TRAINING STANDARDS COMMISSION, Respondent

No. COA13-288

Filed 5 November 2013

1. **Administrative Law—petitioner's proposed additional findings—no requirement that agency adopt**

    There was no basis in law for a contention that an agency should have adopted petitioner's proposed additional findings in an action involving a police officer's suspended law enforcement certification.

2. **Administrative Law—findings for sanctions not imposed—not required**

    In an action arising from the suspension of a police officer's law enforcement certification, respondent was required to make adequate findings to support its decision, but petitioner cited no case, statute, or regulation requiring an agency to make findings about sanctions it elected not to impose.

3. **Constitutional Law—due process—equal protection—law enforcement certification—findings**

    In an action involving a police officer's suspended law enforcement certification, respondent's findings were sufficient to address petitioner's due process and equal protection arguments. Respondent made findings about other officers who were suspended or received a lesser sanction and found that those officers who had committed similar offenses were treated similarly.

4. **Constitutional Law—agency authority to decide punishment—not unfettered**

    The fact that respondent, which issued law enforcement certifications, had the authority to exercise some discretion in deciding whether to punish petitioner with a suspension or something less severe did not render the regulations unconstitutional. The regulations at issue did not give respondent unfettered discretion.

5. **Constitutional Law—substantive due process—suspension of agency certification**

    A law enforcement officer whose certification was suspended by respondent was not deprived of substantive due process where

respondent did not offer him a consent agreement. Respondent's actions were not arbitrary because preserving the credibility of law enforcement certifications is a valid state objective and suspending the certification for officers who undermine that credibility is rationally related to that objective.

**6. Constitutional Law—equal protection—suspension of law enforcement certification**

A police officer was not deprived of his equal protection rights when respondent suspended his law enforcement certification. Respondent's interest in preserving the credibility of law enforcement officer certifications is substantial and there was a rational relation between respondent's decision to distinguish between petitioner and other officers who had received lesser sanctions.

Appeal by Petitioner from Order entered on or about 18 July 2012 by Judge Shannon Joseph in Superior Court, Wake County. Heard in the Court of Appeals 29 August 2013.

*Edelstein & Payne by M. Travis Payne, for petitioner-appellant.*

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Catherine F. Jordan, for respondent-appellee.*

STROUD, Judge.

Jay Krueger ("petitioner"), an officer with the Raleigh Police Department, appeals from a Superior Court order entered 18 July 2012, affirming the final agency decision issued by the North Carolina Criminal Justice Education and Training Standards Commission ("respondent") which suspended petitioner's law enforcement certification for 180 days. For the following reasons, we affirm the trial court's order and hold that respondent did not violate petitioner's constitutional rights.

I. Factual Background

The present appeal is the second to come before this Court in this matter. Our previous opinion laid out the factual background:

> In May 2005, petitioner, a certified law enforcement officer employed since 2000 by the Raleigh Police Department ("the Department"), was interviewed by the Department after allegations surfaced that he had submitted falsified or inaccurate radar training records. Petitioner admitted

that he had signed forms [Form SMI 15] for two other law enforcement officers showing that those officers had completed radar training with petitioner when they had not in fact done so.

As a result, petitioner was suspended without pay for 20 days and barred from applying for special assignments or promotions within the Department. The Commission then initiated action to revoke petitioner's law enforcement certification. 12 N.C. Admin. Code 09A.0204(b)(8) (2008) provides that the Commission may suspend, revoke, or deny an officer's or applicant's certification if the Commission finds that the officer or applicant "knowingly and willfully, by any means of false pretense, deception, defraudation, misrepresentation or cheating whatsoever, aided another person in obtaining or attempting to obtain credit, training or certification from the Commission[.]"

When the suspension is for such a reason, "the period of sanction shall be not less than five years; however, the Commission may either reduce or suspend the period of sanction ... or substitute a period of probation in lieu of suspension of certification following an administrative hearing ..." 12 N.C. Admin. Code 09A.0205 (b)(5) (2008). To that end, the Commission has adopted a policy authorizing its Probable Cause Committee, "[i]n those cases that it deems to be appropriate," to enter into a consent agreement with an officer to reduce the sanction imposed before a Final Agency Decision is reached.

*Krueger v. North Carolina Criminal Justice Educ. & Training Standards Com'n*, 198 N.C. App. 569, 571, 680 S.E.2d 216, 218 (2009). We held that the case was not appropriate for disposition on summary judgment because there were genuine issues of material fact relevant to whether respondent's decision was arbitrary and capricious and whether it violated petitioner's constitutional rights. *Id.*

On remand, the parties conducted additional discovery and presented evidence regarding approximately thirty other officers whose cases had been considered by respondent's Probable Cause Committee. Petitioner again claimed that respondent had treated him differently from other officers who had violated respondent's standards and that this differential treatment violated his constitutional rights. The Administrative Law Judge (ALJ) made findings of fact with regard to

petitioner's case and that of the other officers whose cases had been presented. The ALJ found that petitioner was subject to suspension under the relevant regulations and that he was not treated dissimilarly from officers similarly situated. The ALJ therefore concluded that petitioner's constitutional rights had not been violated. The final agency decision issued on or about 11 November 2010 adopted the ALJ's findings and conclusions, essentially verbatim.

Petitioner again petitioned the Superior Court to review the final agency decision. By order entered 18 July 2012, the Superior Court concluded that respondent had not acted arbitrarily or capriciously and that petitioner's constitutional rights had not been violated. Petitioner was served with the order on 21 November 2012 and filed written notice of appeal on 19 December 2012.

## II. Analysis

Petitioner argues that respondent's decision to suspend his law enforcement certification for 180 days violates his right to due process and equal protection because it decided not to offer him a "consent agreement" with lesser sanctions. We disagree.

### A. Standard of Review

> [I]n reviewing a superior court order examining an agency decision, an appellate court must determine whether the agency decision (1) violated constitutional provisions; (2) was in excess of the statutory authority or jurisdiction of the agency; (3) was made upon unlawful procedure; (4) was affected by other error of law; (5) was unsupported by substantial admissible evidence in view of the entire record; or (6) was arbitrary, capricious, or an abuse of discretion. In performing this task, the appellate court need only consider those grounds for reversal or modification raised by the petitioner before the superior court and . . . argued on appeal to this Court.

*Shackleford-Moten v. Lenoir County Dept. of Social Services*, 155 N.C. App. 568, 572, 573 S.E.2d 767, 770 (2002) (citations omitted), *disc. rev. denied*, 357 N.C. 252, 582 S.E.2d 609 (2003).

Petitioner's arguments on appeal are limited to issues of due process and equal protection.[1] Thus, the only error petitioner asserts is

---

1. **[1]** Petitioner does state that the agency should have adopted his proposed additional findings. But this argument has no basis in law and petitioner cites none that supports

one of law, which we review *de novo*. *Hardee v. North Carolina Bd. of Chiropractic Examiners*, 164 N.C. App. 628, 633, 596 S.E.2d 324, 328, *cert. denied and disc. rev. denied*, 359 N.C. 67, 604 S.E.2d 312 (2004).

## B. Required Findings and Discretion

**[2]** Petitioner first argues that Respondent violated his due process rights—though he does not specify which type of due process—by declining to offer him a consent agreement without making findings about why it declined to do so.

Petitioner mischaracterizes what findings are required. Respondent was required to make adequate findings of fact to support its decision to suspend petitioner's law enforcement certification. *See Cameron v. North Carolina State Bd. of Dental Examiners*, 95 N.C. App. 332, 339, 382 S.E.2d 864, 869 (1989) (holding that the State Board of Dental Examiners did not act arbitrarily or capriciously when it suspended a dentist's license after finding that he had been negligent and incompetent in the practice of dentistry). It is undisputed that respondent's decision to suspend petitioner's certification was supported by extensive findings. Petitioner cites no case, statute, or regulation requiring an agency to make findings about sanctions it elected not to impose. The cases petitioner does cite simply do not support his argument to the contrary.

Respondent found that petitioner had knowingly and willfully falsified Form SMI-15 three times, that such conduct was in violation of 12 N.C. Admin. Code 9A.0204(b)(8) (2010), and that petitioner's certification was therefore subject to no less than a five year suspension. Respondent then reduced petitioner's sanction to a 180-day suspension, as authorized by 12 N.C. Admin. Code 9A.0205(b)(5) (2010) (permitting the reduction of an otherwise five-year suspension where the suspension is for "obtaining, attempting to obtain, aiding another person to obtain, or aiding another person to attempt to obtain credit, training or certification by any means of false pretense, deception, defraudation, misrepresentation or cheating.").[2]

---

it. *See North Carolina Com'r of Banks v. Weiss*, 174 N.C. App. 78, 91, 620 S.E.2d 540, 548 (2005) (rejecting an argument that the Banking Commission had to make certain findings because "additional findings could have been made from [the] evidence[.]"). Reviewing courts are "bound by the findings of the agency if they are supported by competent, material, and substantial evidence in view of the entire record as submitted." *Bashford v. North Carolina Licensing Bd. for General Contractors*, 107 N.C. App. 462, 465, 420 S.E.2d 466, 468 (1992) (citation, quotation marks, and brackets omitted).

2. In his brief, petitioner consistently refers to the length of his suspension as a suspension "for five years". These statements are misleading; respondent reduced petitioner's suspension to 180 days.

**[3]** Moreover, respondent *did* make findings about a number of other officers who were suspended or received a lesser sanction and found that those officers who had committed similar offenses were treated similarly. These findings are sufficient to address petitioner's due process and equal protection arguments, which we address below.

Respondent's findings as to petitioner's violations are sufficient to support its decision to suspend his certification. This decision is consistent with respondent's statutory authority and comports with the regulations it has promulgated. *See* N.C. Gen. Stat. § 17C-6(a)(12) (2009) (authorizing respondent to "suspend, revoke, or deny, pursuant to the standards that it has established."); 12 N.C. Admin. Code 9A.0203 (2010); 12 N.C. Admin. Code 9A.0204(b)(8); 12 N.C. Admin. Code 9A.0205(b) (5). Thus, his argument that respondent's findings fail to demonstrate a course of reasoning or are otherwise inadequate is overruled.

**[4]** Petitioner further argues that the lack of regulations or rules as to when an officer who violates respondent's standards is eligible for a consent agreement vests respondent with unfettered discretion and is therefore unconstitutional. Petitioner does not explain how such discretion is unconstitutional or whether he grounds this challenge on the state or federal constitution.

Petitioner cites no case invalidating a regulation promulgated pursuant to statutory authority on the basis that it vests the agency with discretion in determining the level of sanction for violation of its rules. The cases petitioner cites simply stand for the unremarkable proposition that "[a]n ordinance which vests unlimited or unregulated discretion in a municipal officer is void." *Lewis v. City of Kinston*, 127 N.C. App. 150, 154, 488 S.E.2d 274, 277 (1997) (quoting *Maines v. City of Greensboro*, 300 N.C. 126, 131, 265 S.E.2d 155, 158 (1980)). This case concerns neither an ordinance nor a municipal officer.

Additionally, the regulations at issue do not vest respondent with *unfettered* discretion. The regulations specify which violations must result in revocation and which may result in suspension. *See* 12 N.C. Admin. Code 9A.0204. The regulations require suspensions for five years or more, but permit reduction or suspension of the sanction for certain violations, including petitioner's. 12 N.C. Admin. Code 9A.0205(b). The fact that respondent has the authority to exercise some discretion in deciding whether to punish petitioner with a suspension or something less severe does not render the regulations unconstitutional.[3] Therefore,

---

3. *See CVS Pharmacy, Inc. v. North Carolina Bd. of Pharmacy*, 162 N.C. App. 495, 502, 591 S.E.2d 567, 571 (2004) ("The Board has the discretion to select a lesser punishment in

all of petitioner's arguments with regard to the findings and amount of discretion exercised by respondent are meritless.

## C.  Substantive Due Process

**[5]** Petitioner next argues that respondent violated his right to substantive due process by not offering him a consent agreement and reduced sanctions. We disagree.

"Substantive due process protection prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 282 (1998) (citations and quotation marks omitted). "The touchstone of due process is protection of the individual against arbitrary action of government." *Jones v. City of Durham*, 183 N.C. App. 57, 61, 643 S.E.2d 631, 634 (2007) (citation, quotation marks, and brackets omitted). A government action is not arbitrary if it had "a rational relation to a valid state objective." *City-Wide Asphalt Paving, Inc. v. Alamance County*, 132 N.C. App. 533, 539, 513 S.E.2d 335, 339 (citation and quotation marks omitted), *app. dismissed and disc. rev. denied*, 350 N.C. 826, 537 S.E.2d 815 (1999).

Petitioner admitted to falsifying respondent's Form SMI 15 regarding his training of two officers for their radar certification and respondent found that he did so. Respondent has the authority pursuant to 12 N.C. Admin. Code 9A.0203 to suspend the certification of someone who violates Commission rules. 12 N.C. Admin. Code 9A.0204(b) further specifies that respondent may suspend the certification of someone who "has knowingly and willfully, by any means of false pretense, deception, defraudation, misrepresentation or cheating whatsoever, aided another

accord with reason when the permitee has so clearly violated the statute."); *In re Appeal from Civil Penalty*, 324 N.C. 373, 379, 379 S.E.2d 30, 34 (1989) (declaring that "discretionary judicial authority may be granted to an agency when reasonably necessary to accomplish the agency's purposes."); *State v. Stansbury*, 230 N.C. 589, 591, 55 S.E.2d 185, 187 (1949) ("It is the accepted rule with us that within the limits of the sentence permitted by the law, the character and extent of the punishment is committed to the sound discretion of the trial court, and may be reviewed by this Court only in case of manifest and gross abuse." (citation and quotation marks omitted)); *Burton v. City of Reidsville*, 243 N.C. 405, 407, 90 S.E.2d 700, 703 (1956) (stating that courts reviewing administrative decisions "only decide[] whether the action of the public official was contrary to law or so patently in bad faith as to evidence arbitrary abuse of his right of choice."); *State ex rel. Com'r of Ins. v. North Carolina Rate Bureau*, 300 N.C. 381, 402, 269 S.E.2d 547, 563 (1980) ("The Legislature can obviously not anticipate every problem which will arise before an administrative agency in the administration of an act. The legislative process would be completely frustrated if that body were required to appraise beforehand the myriad situations to which it wished a particular policy to be applied and to formulate specific rules for each situation.").

person in obtaining or attempting to obtain credit, training or certification from the Commission." 12 N.C. Admin. Code 9A.0204(b)(8). Finally, respondent may reduce or suspend the sanction of someone subject to suspension under 12 N.C. Admin. Code 9A.0204(b)(8). 12 N.C. Admin. Code 9A.0205(b)(5).

A 180-day suspension of a law enforcement certification cannot be said to "shock the conscience" when the certified officer knowingly and willfully falsifies training records. Additionally, on these facts, we have no difficulty concluding that there was a rational basis for respondent to suspend petitioner's certification. Law enforcement officers are entrusted with a great deal of responsibility by the State and effective law enforcement requires a number of specialized skills, including accurate use of radar devices. An officer's qualifications and training are vital to his credibility. When an officer misrepresents his training and qualifications, there can be significant consequences for the State. *See, e.g., State v. Peterson,* ___ N.C. App. ___, ___, 744 S.E.2d 153, 160 (2013) (affirming an order for a new trial where one of the State's key law enforcement witnesses lied about his experience and qualifications).

We conclude that respondent's actions were not arbitrary because preserving the credibility of law enforcement certifications is a valid state objective and suspending the certification of officers who undermine that credibility is rationally related to that objective. *Cf. Matter of DeLancy,* 67 N.C. App. 647, 654, 313 S.E.2d 880, 885 (holding that "the Board's authority to regulate the licensing of dental hygienists is within the police power of the State, and that the Board's action in the present case [suspending a hygentist for 12 months after it found the hygienist had violated its rules] was rationally related to the legislative goal of protection of the public health and welfare."), *app. dismissed and disc. rev. denied,* 311 N.C. 756, 321 S.E.2d 130 (1984). Therefore, we hold that respondent did not violate petitioner's right to substantive due process either under the Fourteenth Amendment or the North Carolina Constitution. *See City-Wide Asphalt Paving, Inc.,* 132 N.C. App. at 539, 513 S.E.2d at 339.

D.   Equal Protection

[6] Petitioner next claims respondent's actions violated his right to equal protection. Petitioner also argues that we must subject respondent's decision not to grant him a lesser sanction to strict scrutiny because it infringes on his "fundamental right" to earn a living. We disagree that respondent's decision merits strict scrutiny and hold that respondent did not violate petitioner's right to equal protection.

The Equal Protection Clause of Article I, Section 19 of the North Carolina Constitution and the Equal Protection Clause of Section 1 of the Fourteenth Amendment to the United States Constitution forbid North Carolina from denying any person the equal protection of the laws, and require that all persons similarly situated be treated alike.

The Equal Protection Clauses function to restrain our state from engaging in activities that either create classifications of persons or interfere with a legally recognized right. Upon the challenge of a [governmental action] as violating equal protection, our courts must first determine which of several tiers of scrutiny should be utilized and then whether the [action] meets the relevant standard of review. Where the upper tier of equal protection analysis requiring strict scrutiny of a governmental classification applies only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class, we apply the lower tier or rational basis test if the [action] neither classifies persons based on suspect characteristics nor impinges on the exercise of a fundamental right.

*Liebes v. Guilford County Dept. of Public Health*, ___ N.C. App. ___, ___, 713 S.E.2d 546, 549 (citations and quotation marks omitted), *disc. rev. denied*, 365 N.C. 361, 718 S.E.2d 396 (2011).

Under any level of scrutiny, petitioner's equal protection challenge must fail if the officers who received lesser punishments were not similarly situated to him. *Yan-Min Wang v. UNC-CH School of Medicine*, ___ N.C. App. ___, ___, 716 S.E.2d 646, 658 (2011) ("Petitioner was required to show as an integral part of her equal protection claim that similarly situated individuals were subjected to disparate treatment." (citation omitted)); *see Jones v. Keller*, 364 N.C. 249, 260, 698 S.E.2d 49, 57 (2010) ("[E]qual protection of the laws is not denied by a statute prescribing the punishment to be inflicted on a person convicted of crime unless it prescribes different punishment *for the same acts committed under the same circumstances by persons in like situation.*" (citation and quotation marks omitted) (emphasis added)), *cert. denied*, ___ U.S. ___, 179 L.Ed. 2d 935 (2011). "[P]ersons who are in all relevant respects alike are similarly situated." *Clayton v. Branson*, 170 N.C. App. 438, 457, 613 S.E.2d 259, 272 (citation and quotation marks omitted), *disc. rev. denied*, 360 N.C. 174, 625 S.E.2d 785 (2005).

To the extent respondent did treat petitioner differently than similarly situated officers, respondent's actions must meet the appropriate level of scrutiny. Petitioner claims that he is in the class of officers who were not given consent agreements and implies that there was no reason to treat them differently from the officers who did receive consent agreements and the lesser sanctions that accompany such agreements. He argues that there were other officers who committed worse offenses but received consent agreements and that therefore respondent violated his right to equal protection by not offering him a similar agreement. Petitioner does not claim that respondent has discriminated on the basis of race, religion, or any other protected class.

Nevertheless, petitioner contends that we should subject respondent's decision to strict scrutiny because our courts have sometimes described the right to earn a living as "fundamental" under the state constitution. *See, e.g., Roller v. Allen*, 245 N.C. 516, 518-19, 96 S.E.2d 851, 854 (1957) ("The right to work and earn a livelihood is a property right that cannot be taken away except under the police power of the State in the paramount public interest for reasons of health, safety, moral, or public welfare. The right to conduct a lawful business or to earn a livelihood is regarded as fundamental." (citation and quotation marks omitted)).

Yet, even in those cases, our courts have not applied strict scrutiny. Rather, when the fundamental right to work and earn a livelihood under Article I, §§ 1, 19, and 35 of the North Carolina Constitution have been implicated, our courts have considered whether the challenged governmental action is "rationally related to a substantial government purpose." *Treants Enters. v. Onslow Cty.*, 320 N.C. 776, 778-79, 360 S.E.2d 783, 785 (1987) ("This is the requirement article I, section 1 [of the North Carolina Constitution] imposes on government regulation of trades and business in the public interest."); *see also Roller*, 245 N.C. at 525, 96 S.E.2d at 859 ("[W]here . . . no substantial public interest is shown to be involved or adversely affected, regulation is not justified."). "The test used to interpret the validity of state regulation of business under Article I, Section 1 is the same as that used . . . for an equal protection" challenge of such regulation under our Constitution. *Sanders v. State Personnel Com'n*, 197 N.C. App. 314, 326, 677 S.E.2d 182, 190 (2009).

We first note that "[t]he regulations at issue here do not . . . [regulate] an ordinary and simple occupation . . . intended to be free from governmental regulation," but police officers entrusted with the authority to enforce the laws of our state. *Id.* at 326-27, 677 S.E.2d at 191 (citation and quotation marks omitted). We find respondent's interest in preserving the credibility of law enforcement officer certifications "substantial."

Therefore, to the extent that respondent treated petitioner differently from similarly situated officers, its differential treatment must be rationally related to that substantial public interest.

Thus, we must consider (1) whether petitioner was similarly situated with those officers who were given lesser sanctions, and if so, (2) whether there is some rational relationship between the distinctions drawn by respondent and the government's substantial interest in preserving the credibility of law enforcement training and certification.

In deciding how to sanction an officer who violated the rules and regulations promulgated by respondent, respondent looks not to the bare fact of some violation, but considers the specific violation that occurred and the context of that violation. *See* 12 N.C. Admin. Code 9A.0204; 12 N.C. Admin. Code 9A.0205; *Clayton*, 170 N.C. App. at 458, 613 S.E.2d at 273 (observing that no "party would ever make decisions about the proper response to a claim based only on bare-bones information" and looking to the city's factors in making the determination). Thus, the particular violation found by the Probable Cause Committee is a relevant aspect for purposes of our equal protection analysis.

Petitioner falsified respondent's Form SMI 15, which records the amount of time an officer spends training with a radar device. All but two of the officers who received lesser sanctions had committed different violations. Most of those officers who were given written warnings or reprimands had failed to disclose a prior criminal conviction or had committed a misdemeanor.[4] Therefore, petitioner is not alike in all relevant respects to them.

There are twelve officers in the record who had falsified respondent's Form SMI 15, as petitioner did. Of those twelve, all but two received suspensions comparable to or more severe than petitioner's.

4. Petitioner states in a conclusory fashion that several of those officers had committed more serious offenses that he had. Although it is clear that these officers committed *different* offenses than petitioner, it is not evident to us that they were necessarily "worse." We see no basis for this Court to substitute our judgment for that of respondent on that issue. *See generally Com. of Pa. ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55, 82 L.Ed. 43, 46 (1937) ("Save as limited by constitutional provisions safeguarding individual rights . . . [t]he comparative gravity of criminal offenses and whether their consequences are more or less injurious are matters for [the State's] determination." (citations omitted)). Respondent's use of discretion in deciding which offenses were worse is not an equal protection violation. *See State v. Jenkins*, 292 N.C. 179, 191, 232 S.E.2d 648, 655 (1977) ("The use of this discretionary [sentencing] power by the trial judge is not a denial of equal protection of the laws." (citations omitted)); *see also Howard v. Fleming*, 191 U.S. 126, 135-36, 48 L.Ed. 121, 124 (1903) (rejecting the claim that leniency to one of three conspirators was an equal protection violation).

Two officers who had falsified Form SMI 15 received official written reprimands. In both cases, the officers had been misinformed by a superior officer about what was required of them. Petitioner had no such mitigating excuse. It is reasonable for respondent to treat more senior or supervisory officers who violate its training regulations differently than more novice officers who had been misinformed about what was expected of them.

Petitioner was not alike in "all relevant respects" to the officers who received reprimands or warnings instead of a suspension for other violations. Additionally, there was a rational relation between respondent's decision to distinguish between petitioner and other officers who had falsified Form SMI 15, but received lesser sanctions, and the government's substantial interest in preserving the credibility of law enforcement certifications. Accordingly, we hold that respondent did not violate petitioner's right to equal protection by suspending his law enforcement certification for 180 days. *See Clayton,* 170 N.C. App. at 457, 613 S.E.2d at 272; *Yan-Min Wang,* ___ N.C. App. at ___, 716 S.E.2d at 658.

### III. Conclusion

For the foregoing reasons, we hold that respondent's decision to suspend petitioner's law enforcement certification for 180 days did not violate petitioner's constitutional rights. We therefore affirm the trial court's order in all respects.

AFFIRMED.

Judges CALABRIA and HUNTER, JR., Robert N. concur.