JOSEPH J. HARDEE, D.C., Petitioner v. NORTH CAROLINA BOARD OF CHIROPRACTIC EXAMINERS, Respondent

No. COA03-860

(Filed 1 June 2004)

**1. Chiropractors— Board of Examiners—governed by Administrative Procedure Act**

The Board of Chiropractic Examiners is an occupational licensing agency and its hearings are governed by the North Carolina Administrative Procedure Act.

**2. Chiropractors— disciplinary hearing—evidence of dishonesty**

The Board of Chiropractic Examiners did not err by considering evidence of dishonesty (failure to comply with an informal agreement intended to avoid more severe discipline) as relevant to the scope, length, and nature of the discipline imposed for felonies involving moral turpitude. Discipline is in the discretion of the Board, and the Board may consider evidence of truthfulness and character.

**3. Chiropractors— discipline—not arbitrary and capricious**

The Board of Chiropractic Examiners did not act arbitrarily and capriciously in imposing a more severe punishment in this case than in others. This petitioner played a substantial role in committing felonies and there was considerable evidence of bad character; furthermore, the discipline here is rationally related to the misconduct.

Appeal by petitioner from judgment entered 2 April 2003 by Judge Ripley E. Rand in Wake County Superior Court. Heard in the Court of Appeals 15 March 2004.

*Johnson, Hearn, Vinegar, Gee & Mercer, PLLC, by George G. Hearn and Frank X. Trainor, III, for petitioner-appellant.*

*Vance C. Kinlaw for respondent-appellee.*

LEVINSON, Judge.

Dr. Joseph J. Hardee, D.C., (Hardee) appeals from a superior court order affirming a disciplinary decision of the North Carolina Board of Chiropractic Examiners (the Board) which established

Hardee's sanction for being convicted of two felonies involving moral turpitude. We affirm.

Hardee is a licensed chiropractic physician with a practice in Raleigh, North Carolina. In December 2000, he was convicted of two felony offenses in Wake County Superior Court upon his tender of *Alford* pleas, one for felony obtaining possession of twelve tablets of Tylenol with Codeine by fraud, and the second for felony embezzlement from a previous employer. Pursuant to N.C.G.S. § 90-154(b)(2), conviction of these offenses subjected Hardee to discipline by the North Carolina Board of Chiropractic Examiners.

In August 2000, the Board initiated disciplinary proceedings against Hardee. Seeking to resolve the issue of professional discipline in an informal manner, the Secretary of the Board and Hardee entered into an "Informal Settlement Agreement" (ISA) that prescribed a truncated chiropractic license suspension and substance dependency treatment requirements.

Hardee and the Secretary of the Board subsequently agreed that the ISA would be rescinded prospectively and that the Board could substitute its original complaint with a new one. Therefore, on 8 October 2001, the Board again initiated disciplinary proceedings against Hardee on the basis of the December 2000 convictions. The parties assented to an extensive pre-hearing agreement in which they stipulated that "[t]he Hearing Panel [could] consider the terms of th[e] Informal Settlement Agreement and issues of whether [Hardee] complied or did not comply, in whole or in part, with the Informal Settlement Agreement." Moreover, both parties stipulated that one of the issues to be determined was "[w]hether Dr. Hardee possesses the requisite good moral character to be licensed as a doctor of chiropractic by the Board." The pre-hearing agreement also included a variety of "mitigating factors" Hardee wished for the Board to consider, while the Board sought to have Hardee's "failure to fully comply with the Informal Settlement Agreement" considered as an "aggravating factor."

At the disciplinary hearing on the 8 October 2001 complaint, evidence was presented concerning numerous topics, including the following evidence related to the ISA: Pursuant to the ISA, Hardee agreed to voluntarily surrender his chiropractic license for a period of three years; however, after only six months of this suspension, he would be permitted to apply for reinstatement of his license if he satisfied certain conditions related to overcoming a drug dependency

problem. A letter to Hardee from the Secretary of the Board provided the following clarification as to the applicable restrictions imposed upon Hardee during his license suspension:

During the term of license suspension, an unlicensed chiropractor may *not*:

1. Be present during business hours at a chiropractic office or clinic in which he has an ownership interest or which has been advertised to the public as his office or clinic.

2. Interpret or analyze x-rays.

3. Make a diagnosis or perform any component of physical examination that requires clinical judgment or interpretation.

4. Perform any adjustment or manipulation, either by hand or by instrument. . . .

[5]. Consult with, make any report of findings to, or develop any treatment plan for a patient.

6. Sign or submit any insurance claim form.

7. Own an interest in a chiropractic office or clinic after twelve months have elapsed without reinstatement of license.

8. Purchase an interest in any chiropractic office or clinic until his license is reinstated.

There was evidence that, prior to the beginning of his license suspension under the ISA, Hardee transferred nominal ownership of his clinic to other parties, removed his name from the signs and stationary of his clinic, and hired a relatively inexperienced chiropractor, Dr. Alicia Nossov, to perform adjustments on patients at his clinic at a rate of $7.50 per adjustment.

An undercover investigator, hired by the Board to pose as a new patient, testified that he visited Hardee's clinic five times. The undercover investigator observed Hardee at the clinic and noticed him perform a series of tasks, including: pressing on the investigator's neck and back to determine whether the investigator was sore in a particular place, interpreting x-rays, reporting chiropractic findings to the investigator, recommending a plan of treatment, and using an Acuspark device and a massager on the investigator. According to the investigator, Hardee informed him that he could pay for his visits by drafting a check payable to "Dr. Hardee."

HARDEE v. N.C. BD. OF CHIROPRACTIC EXAM'RS

[164 N.C. App. 628 (2004)]

Dr. Nossov testified that Hardee told her that his problem with the Board was attributable to the fraudulent conduct of another chiropractor for whom he once worked and that his agreement with the Board only prohibited him from performing adjustments for patients. She further testified that during the term of his proposed suspension under the ISA, Hardee was present during business hours, greeted patients, performed initial physical examinations, interpreted and analyzed x-rays, developed diagnoses and treatment plans, performed adjustments on some of his friends, and provided written instructions to Dr. Nossov specifying adjustments to be performed on patients. According to Dr. Nossov, Hardee also discussed personal injury claims with patients' attorneys, prepared and mailed billing statements to insurers and attorneys, and prepared patients' personal injury treatment narratives for Dr. Nossov to sign.

Hardee testified on his own behalf at the hearing. Though he admitted to performing adjustments on a few of his friends during his suspension under the ISA, he denied practicing as a chiropractor during his suspension and characterized his activities at the clinic as those of a chiropractic assistant.

Following the hearing, the Board rendered a decision including findings of fact and the following conclusions of law:

3. G.S. [§] 90-154(b)(2) states that conviction of a felony or of a crime involving moral turpitude is grounds for disciplinary action by the Board.

4. G.S. [§] 90-143 requires an applicant for licensure as a chiropractic physician in this State to present satisfactory evidence of good moral character. After licensure, a chiropractic physician has an affirmative duty to maintain good moral character.

. . . .

6. Obtaining a Controlled Substance by Fraud, in violation of G.S. [§] 90-108, is both a felony and a crime involving moral turpitude.

7. Embezzlement, in violation of G.S. [§] 14-90, is both a felony and a crime involving moral turpitude.

8. A respondent's willful violation of an Informal Settlement Agreement entered into with the Secretary of the Board is evidence of a lack of trustworthiness and the loss of good moral character.

The Board determined Hardee was "guilty of having been convicted of two felonies, in violation of G.S. [§] 90-154(b)(2)" and imposed a five-year chiropractic license suspension, the implementation of which was stayed on condition that Hardee comply with certain, probationary terms. Specifically, Hardee's license was to be placed on "probationary status" for five years, during which time he would serve a three year active license suspension, seek Board approval of professional business arrangements, have a mentor appointed, and submit to quarterly urine drug screens. While on probationary status, Hardee would be permitted to perform the duties of a chiropractic assistant.

Pursuant to N.C.G.S. § 150B-45, Hardee appealed to the Wake County Superior Court, which entered an order affirming the Board's decision. From the superior court's order, Hardee appeals to this Court, contending (1) the Board's decision unlawfully imposes punishment for his non-compliance with the ISA, (2) the Board's sanction is arbitrary and capricious, and (3) the Board committed other miscellaneous errors that merit reversal. We conclude these contentions lack merit.

[1] The following principles govern judicial review of the Board's disciplinary decision: The Board of Chiropractic Examiners is an "occupational licensing agency" as defined by N.C.G.S. § 150B-2(4b) (2003). Accordingly, hearings conducted by the Board are governed by Article 3A of the North Carolina Administrative Procedure Act. N.C.G.S. § 150B-38(a)(1) (2003). "To obtain judicial review of a final agency decision . . . , the person seeking review must file a petition in the Superior Court of Wake County. . . ." N.C.G.S. § 150B-45 (2003). "The review by a superior court of agency decisions . . . [is] conducted by the court without a jury." N.C.G.S. § 150B-50 (2003).

> [I]n reviewing a final decision, the court may affirm the decision of the agency or remand the case . . . for further proceedings. It may also reverse or modify the agency's decision . . . if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;

(3)  Made upon unlawful procedure;

(4)  Affected by other error of law;

(5)  Unsupported by substantial evidence . . . in view of the entire record as submitted; or

(6)  Arbitrary, capricious, or an abuse of discretion.

N.C.G.S. § 150B-51(b) (2003). As to matters of fact, a reviewing court must apply the "whole record test" and "is bound by the findings of the [agency] if they are supported by competent, material, and substantial evidence in view of the entire record as submitted." *Bashford v. N.C. Licensing Bd. for General Contractors*, 107 N.C. App. 462, 465, 420 S.E.2d 466, 468 (1992) (citations and internal quotation marks omitted). "If it is alleged that an agency's decision was based on an error of law then a *de novo* review is required." *Walker v. N.C. Dep't of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990) (citation omitted). "A party to a review proceeding in a superior court may appeal to the appellate division from the final judgment of the superior court. . . . The scope of review to be applied by the appellate court . . . is the same as it is for other civil cases." N.C.G.S. § 150B-52 (2003). Thus, this Court examines the trial court's order for errors of law; this "twofold task" involves: "(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Eury v. N.C. Employment Sec. Comm'n*, 115 N.C. App. 590, 597, 446 S.E.2d 383, 387-88 (1994) (citation omitted).

---

**[2]**  With these principles in mind, we address Hardee's first argument on appeal, in which he contends that the Board's discipline was "primarily based upon consideration of the ISA" and that the alleged reliance on the ISA "was an error of law and in excess of the Board's statutory authority[.]" This is so, Hardee contends, because (1) the ISA does not comply with the North Carolina General Statues and is, therefore, an unenforceable document that "cannot be used as a basis for discipline[,]" and (2) even assuming *arguendo* that the ISA is enforceable, the Board still erred in using it as a basis for discipline because the Board does not have the statutory authority to impose discipline for breach of contract. We conclude that the Board did not err in considering whether Hardee's willful refusal to comply with the ISA evinced dishonesty such that his sanction should be aggravated in the interests of protecting the public and preserving the integrity of the chiropractic profession.

As an initial matter, we note that, inasmuch as Hardee argues that he was disciplined for breaching the ISA, he mischaracterizes the adjudication made by the Board. In its order, the Board expressly provides that the grounds for professional discipline are Hardee's two convictions for felonies involving moral turpitude. The Board's order does not purport to enforce the ISA, and Hardee has produced, at best, unprepossessing evidence in favor of his argument that the Board's disciplinary order is a pretext for enforcement of the ISA. Therefore, the issue before us is not whether the Board erred in imposing discipline for breach of the ISA, and we need not pass on the validity of the ISA.

However, it is implicit in the Board's order, and the Board's attorney admitted to the superior court, that Hardee's sanction was aggravated because of a pattern of dishonesty, evinced in part by his willful refusal to keep his word with respect to the ISA. Accordingly, the issue for this Court, properly characterized, is whether the Board erred in considering Hardee's noncompliance with the ISA as evidence of dishonesty and in intensifying the punishment he received as a result of the dishonesty.

Chapter 90, Article 8 of the North Carolina General Statutes governs the licensing and regulation of chiropractors. Located within this article, N.C.G.S. § 90-154(b)(2) (2003) provides that "[c]onviction of a felony or of a crime involving moral turpitude" is "grounds for disciplinary action by the Board[.]" N.C.G.S. § 90-154(a) (2003) sets forth the disciplinary options available to the Board:

The Board of Chiropractic Examiners may impose any of the following sanctions, singly or in combination, when it finds that a practitioner or applicant is guilty of any offense described in subsection (b):

(1) Permanently revoke a license to practice chiropractic;

(2) Suspend a license to practice chiropractic;

(3) Refuse to grant a license;

(4) Censure a practitioner;

(5) Issue a letter of reprimand;

(6) Place a practitioner on probationary status and require him to report regularly to the Board upon the matters which are the basis of probation.

The discipline imposed upon chiropractors is consigned to the discretion of the Board. In exercising this discretion, the Board may consider evidence concerning a chiropractor's truthfulness and character. Indeed, honesty and good moral character are prevalent themes in the North Carolina Chiropractic Act. Pursuant to N.C.G.S. § 90-143 (2003), a chiropractic license applicant must produce "[s]atisfactory evidence of good moral character" as a precondition to being licensed. Further, many of the grounds for discipline listed in G.S. § 90-154(b) are concerned directly or indirectly with honesty and good character on the part of chiropractic practitioners. Where the legislature has taken steps to ensure that only those of good moral character become licensed chiropractors and to provide for discipline for actions evincing poor moral character, it follows that the Board may consider evidence concerning honesty and good character, or a lack thereof, when determining the scope, length and/or nature of the sanction for a chiropractor adjudged guilty of disciplinary infractions.

In the present case, Hardee committed two felonies involving moral turpitude, which subjected him to professional discipline by the Board under G.S. § 90-154(b). Though the Board imposed discipline only for the felony convictions, its choice of sanction was more severe than it otherwise may have been due to dishonesty on Hardee's part, evidenced by, *inter alia*, his furtive and willful violation of the ISA. As the Chiropractic Act makes the honesty of practitioners a proper concern of the Board of Chiropractic Examiners, we conclude that the Board did not err in considering this evidence of dishonesty as relevant to the scope, length and/or nature of discipline.

Moreover, Hardee's argument that the Board could not consider his dishonest noncompliance with the ISA is unavailing, as he **stipulated** that the Board could consider such evidence as **relevant to his discipline** for the felony convictions. On appeal, Hardee's counsel contends that evidence of Hardee's noncompliance with the ISA could be admissible for **other** purposes, but did not suggest what those purposes might be.[1] As Hardee pled "guilty and responsible" to

1. During oral argument, counsel for Hardee stated that if the active suspension was shorter, his argument that the discipline was really grounded upon Hardee's noncompliance with the ISA would have less force. This illustrates the fallacy in Hardee's central argument on appeal, as it is tantamount to a request of this Court to replace its judgment concerning an appropriate sanction for that of the Board. Indeed, the statements by Hardee's counsel correctly acknowledge that the Board exercises discretion in fashioning appropriate sanctions within the parameters of G.S. § 90-154(a).

having been convicted of two felonies, the central issue before the Board was the scope, length and/or nature of the discipline. This, together with Hardee's stipulation that the hearing panel could consider evidence of his noncompliance with the ISA, helps us easily conclude that Hardee stipulated that his noncompliance with the ISA was relevant for the Board to consider in fixing the penalty for his conviction of two felonies.

Furthermore, we note that Hardee's position is internally inconsistent. Hardee cites a previous Board disciplinary decision, *In re Moore*, in support of his argument that his own sanction is unusually harsh.[2] In that case, the Board made a finding that the chiropractor who was subject to discipline presented the testimony of four character witnesses, tendered approximately 115 additional character witnesses, and submitted written statements from approximately 150 patients and members of his community attesting to his good character. The Board may have considered this evidence of good character in arriving at a lenient sanction for the chiropractor in that case. However, there is no statutory allowance for the Board to consider such material, and it is not directly related to the commission of a felony for which discipline may be imposed pursuant to G.S. § 90-154(b)(2). Rather, the Board considered this evidence of good character as relevant to the appropriate professional discipline, much as it considered Hardee's furtive and willful noncompliance with the ISA as evidence of bad character and untruthfulness. This assignment of error is overruled.

---

[3] We next address Hardee's argument that the discipline imposed by the Board was arbitrary and capricious because it is (1) severe in comparison to previous Board decisions imposing discipline for felony convictions, and (2) not rationally related to his misconduct. We are unpersuaded by these arguments.

"The arbitrary and capricious standard is a difficult one to meet." *McCollough v. N.C. State Bd. of Dental Examiners*, 111 N.C. App. 186, 193, 431 S.E.2d 816, 819 (1993) (citation omitted).

These imposing terms apply when . . . decisions are whimsical because they indicate a lack of fair and careful consideration; when they fail to indicate any course of reasoning and exercise of judgment, or when they impose or omit procedural requirements

---

2. There is no citation for this opinion, but it is a part of the records of the Board of Chiropractic Examiners.

that result in manifest unfairness in the circumstances though within the letter of statutory requirements.

*Id.* (citations and internal quotation marks omitted).

In support of his argument that his sanction is more severe than the sanctions previously imposed for the same transgression, Hardee has produced two Board decisions imposing discipline upon chiropractors for felony convictions. These decisions do not support Hardee's argument that the sanction at issue in the present case is arbitrary and capricious.

In one decision, *In re Cobb*, a chiropractor was convicted of felony wire fraud in federal district court.[3] The Board imposed a five year active license suspension, stayed in favor of placing him on probationary status with a ninety-day active license suspension. In that case, a co-conspirator masterminded the conduct for which the chiropractor was convicted, and the chiropractor's participation in the felony was limited. As such, there were factors counseling in favor of mitigation.

The other Board's decision cited by Hardee is *In re Moore*, previously discussed in this opinion. In *Moore*, a chiropractor was convicted of four counts of obtaining property by false pretenses, for which the Board imposed a ninety-day active license suspension followed by five years on probationary status. In imposing discipline, the Board made a finding that the chiropractor offered the testimony of four character witnesses, tendered approximately 115 additional character witnesses, and submitted written statements from approximately 150 patients and members of his community attesting to the chiropractor's good character. As such, there were factors counseling in favor of mitigation.

In the instant case, Hardee played a substantial role in the commission of the felonies for which he was convicted. In addition, there was considerable evidence of bad character. Specifically, the evidence before the Board tended to show that, *inter alia*, Hardee agreed to abide by the terms of an informal agreement in order to avoid more severe discipline, and, in addition to not complying with the terms to which he had agreed, dishonestly represented to the Board that he had complied with "the letter and spirit" of the agreement. Accordingly, we easily conclude that the Board did not act arbi-

---

3. There is no citation for this opinion, but it is a part of the records of the Board of Chiropractic Examiners.

trarily and capriciously in imposing a more severe punishment in the instant case as compared with past decisions of the Board.

With respect to Hardee's argument that the Board's discipline is not rationally related to his misconduct, we conclude that Board's discipline is not inappropriate in light of the facts and circumstances of the instant case. Hardee was convicted of embezzlement and obtaining a controlled substance by fraud, both of which are felonies involving dishonesty. He has a prior misdemeanor conviction for obtaining a prescription drug by fraud, which is a crime involving dishonesty. Additionally, Hardee's furtive and wilful violation of the ISA provided additional evidence of dishonesty. This assignment of error is overruled.

---

We have also reviewed Hardee's remaining assignments of error and conclude that they lack merit. These assignments of error are overruled.

Affirmed.

Judges TIMMONS-GOODSON and THORNBURG concur.