IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-955

Filed 20 August 2024

Wake County, No. 23 CVS 435

VIVIAN B. FEDEROWICZ, D.C., Petitioner,

v.

NORTH CAROLINA BOARD OF CHIROPRACTIC EXAMINERS, Respondent.

Appeal by petitioner from order entered 15 June 2023 by Judge G. Bryan Collins, Jr., in Wake County Superior Court. Heard in the Court of Appeals 2 April 2024.

*Vinson Law PLLC, by Robin K. Vinson, for petitioner-appellant.*

*Hedrick Gardner Kincheloe & Garofalo, LLP, by A. Grant Simpkins and Anna Baird Choi, for respondent-appellee.*

ZACHARY, Judge.

This case arises from two complaints submitted to the North Carolina Board of Chiropractic Examiners ("the Board") alleging that Petitioner Vivian B. Federowicz, D.C., violated the North Carolina General Statutes regulating chiropractic care. Petitioner appeals from the superior court's order affirming the Board's decision to suspend her Doctor of Chiropractic license for six months and, upon reinstatement, place her on two years of probation with conditions. After careful review, we affirm.

## I.    Background

At the time of the complaints, Greenway Chiropractic, PLLC, ("Greenway") employed Petitioner as a licensed chiropractor. Petitioner focused her practice on "pediatrics and pregnancy." Petitioner taught birthing classes at Greenway's office and maintained a podcast and social media accounts titled "Birthing Outside the Box," in which she emphasized the advantages of giving birth in one's home and other settings outside of a hospital. In a caption for her podcast, Petitioner described herself as "a chiropractor who specializes in maternal and pediatric care."

In December 2021, S.B.,[1] who was 33 years old and pregnant with no prior experience giving birth, heard Petitioner's podcast and sought her out for "holistic prenatal care." S.B. became a patient of Petitioner and began attending her birthing classes. Based on a conversation with Petitioner early in their relationship, S.B. was under the impression that Petitioner was her primary care provider and that visiting an OB-GYN was unnecessary.

S.B.'s chiropractic appointments consisted of Petitioner discussing her podcast with S.B., recommending books to her, and—although Petitioner did not document it in her records—treating S.B. with the "Webster Technique."[2] Additionally, Petitioner "measured the fundal height" of S.B.'s baby and told her that "it felt like [her] baby

---

[1] We use the patient's initials to protect her identity.
[2] In its amended final decision, the Board explains: "The Webster Technique is a chiropractic technique used to treat pregnant patients."

was head down and ready to be born."

Petitioner's medical records indicated that she was treating S.B. only "for routine chiropractic maintenance/wellness care"; none of Petitioner's 38 treatment records from December 2021 to August 2022 mention S.B.'s pregnancy or prenatal care. Petitioner never conducted an ultrasound or took S.B.'s vitals. At appointments and in birthing classes, Petitioner discussed what she perceived as the risks of the use of fetal ultrasounds. Additionally, despite knowing that S.B. suffered from mild scoliosis, Petitioner did not order an x-ray of S.B. until her last visit on 3 August 2022.

At an appointment close to her delivery date, S.B. voiced concern about not having a reliable midwife to assist with her home birth, and Petitioner suggested that S.B. and her baby's father could "just do it"—deliver the baby on their own. After S.B. expressed doubt, Petitioner told S.B. that, for a fee, she could be present for the birth depending on her work schedule. On the afternoon of 9 July 2022, S.B.'s water broke, and early the following morning, Petitioner visited her home. When S.B. expressed alarm over her delivery not progressing, Petitioner encouraged her not to go to the hospital. Subsequently, Petitioner attempted to use a Doppler[3] that S.B.'s partner had borrowed from a midwife to measure the fetal heartbeat. Shortly thereafter, Petitioner left S.B. and the father alone in their home.

---

[3] A "Doppler ultrasound uses sound waves to measure [a] baby's heart rate." *Fetal Heart Rate Monitoring*, Cleveland Clinic, https://my.clevelandclinic.org/health/diagnostics/ 23464-fetal-heart-rate-monitoring (last updated July 13, 2022).

As S.B.'s labor progressed, serious complications arose, and a call was placed to 911. When EMS arrived, they discovered that the baby was partially delivered "in the breech position—delivering feet first." EMS transported S.B. to the emergency room at WakeMed Hospital. Petitioner arrived at the hospital shortly after. Hospital staff pronounced S.B.'s baby deceased. Thereafter, S.B. had three additional office visits with Petitioner; however, the Board would later note that even "[t]he medical records from those visits do not reflect [that S.B.] had previously attempted childbirth."

On 14 July 2022, Lindsay Lavin, M.D. ("Dr. Lavin"), an emergency room physician who treated S.B. at WakeMed, filed a complaint with the Board against Petitioner. In her complaint, Dr. Lavin alleged the existence of the following grounds for the professional discipline of Petitioner: (1) unethical conduct; (2) negligence, incompetence, or malpractice; and (3) "[n]ot rendering acceptable care in the practice of the profession." Dr. Lavin cited Petitioner leaving S.B.'s home before EMS arrived, and upon appearing at the hospital, merely "introduc[ing] herself as a 'friend' to medical staff and . . . not provid[ing] any [of S.B.'s] medical history." On 20 July 2022, the Board received an emailed complaint from Coryell Perez, M.D. ("Dr. Perez"), a labor and delivery physician who also treated S.B. at WakeMed, alleging that Petitioner "practiced outside of the scope of chiropractic by providing prenatal care and/or attending to a patient during a home birth" and asserting that "[t]his outcome was completely preventable."

After opening an investigation, the Board interviewed Dr. Lavin and Dr. Perez and reviewed Petitioner's social media posts and podcast, the 10 July EMS report, and S.B.'s medical records from WakeMed. The Board's investigation concluded that Petitioner could be in violation of the prohibitions against "[u]nethical conduct" and failure to render "acceptable care in the practice of the profession[.]"

On 13 October 2022, the Board issued an order for summary suspension of Petitioner's license pending a hearing. On 21 October 2022, Petitioner filed a motion to lift the summary suspension. After a hearing on 3 November 2022, the Board entered an order lifting the summary suspension. In its order, the Board noted that Greenway had adopted an informed-consent form for pregnant patients that included affirmations that patients understand that the chiropractic care they would receive "is not equivalent and does not replace medical prenatal care"; that Petitioner is a chiropractor and not a medical doctor; that the Webster Technique is not performed to "flip my baby" *in utero*; and that Petitioner is "unable to tell me the position of my baby."

On 16 December 2022, the Board held an administrative hearing, and on 21 December, it issued its amended final agency decision and order,[4] in which the Board made the following conclusions of law:

> 1. Disciplinary action is appropriate pursuant to [N.C. Gen. Stat. §] 90-154(b)(4). [Petitioner] violated 21

---

[4] The Board amended its final decision to correct the effective date of its decretal portion; this amendment does not affect any of the issues on appeal.

NCAC 10.0302(b)(3) and 21 NCAC 10.0304 and engaged in unethical conduct, as defined in [N.C. Gen. Stat. § 90-154.2(5)], by publicly describing herself as a chiropractor "who specializes in maternal and pediatric care", when she does not have the qualifications required by Rule 21 NCAC 10.0304.

The Board recognizes only those specialties listed in 21 NCAC 10.0304(b) or approved pursuant to 21 NCAC 10.0304(c), and licentiates desiring to use a specialty designation must first demonstrate that all requirements to do so have been met. Any published claim of specialization outside the recognized specialties or any published claim of specialization made by or at the behest of a licentiate who has not satisfied all applicable provisions of 21 NCAC 10.0304 constitutes false or misleading advertising. 21 NCAC 10.0304(e). [Petitioner] has not satisfied all applicable provisions of 21 NCAC 10.0304. Thus, [Petitioner]'s published description of herself as a chiropractor who specializes in maternal and pediatric care constitutes false or misleading advertising, which constitutes unethical conduct pursuant to [N.C. Gen. Stat. § 90-154.2(5)].

2. Disciplinary action is appropriate pursuant to [N.C. Gen. Stat. §] 90-154(b)(5). [Petitioner] committed negligence in the practice of chiropractic by failing to secure appropriate care for a patient. [Petitioner] was aware that her 33-year-old patient had no prior experience in giving birth, had not had an ultrasound, and for at least some period had not been receiving medical pre-natal care. [Petitioner] was aware that her patient's water had broken more than 24 hours before the time she left the home of a laboring patient knowing that a mid-wife or other medical provider was not present and was not forthcoming. She failed to secure appropriate care for the patient.

3. Disciplinary action is appropriate pursuant to [N.C. Gen. Stat. §] 90-154(b)(7). [Petitioner] failed to render

>  acceptable care in the practice of the profession, as
>  defined in [N.C. Gen. Stat. §] 90-154.3(a), by failing to
>  properly examine, document and manage the care of a
>  pregnant patient, including during such times that
>  [Petitioner] knew no other provider was providing care.

Based upon these conclusions of law, the Board suspended Petitioner's license for six months and placed her on two years of probation with conditions for reinstatement. Among the conditions for reinstatement, the Board required Petitioner to complete courses in professional standards and documentation, as well as pay to the Board $10,000.00 for the costs of her disciplinary proceeding. Additionally, during her period of probation, Petitioner was prohibited from providing chiropractic care to "any patient known to be pregnant[,]" unless the patient had executed a revised version of Greenway's informed-consent form that included a statement that the patient is "under the care of a formally trained and certified provider (obstetrician or nurse midwife) who could provide standard-of-care prenatal monitoring and labor/delivery care."

On 12 January 2023, Petitioner filed a petition for judicial review of the amended final decision. Petitioner did not challenge the Board's conclusion of law 1, concerning the ground for discipline of unethical conduct based on false or misleading advertising. However, she did challenge the remaining two conclusions of law, as well as certain aspects of the discipline that the Board ordered in its amended final decision. On 23 May 2023, the matter came on for hearing in Wake County Superior Court, and on 15 June 2023, the court entered its order affirming the Board's

amended final decision. In its order, the superior court concluded, *inter alia*:

> 2. [The Board's] Conclusion of Law 2 is supported by the evidence in the record, testimony at hearing, and the Board's statutes and rules governing the practice of chiropractic. The Board did not exceed statutory authority in finding [Petitioner] negligent in the practice of chiropractic.
>
> 3. [The Board's] Conclusion of Law 3 is supported by the evidence in the record, testimony at hearing, and the Board's statutes and rules governing the practice of chiropractic. The Board properly determined [Petitioner] failed to render acceptable care in the practice of chiropractic.
>
> 4. The Board did not abuse its discretion in imposing probationary terms in Order paragraph 6 based on the evidence presented at the contested case and in light of the entire record.
>
> 5. The Board has statutory authority to impose payment of costs and/or attorney's fees to a licensee found to have violated Board statutes and rules.
>
> 6. [Petitioner] has failed to meet her burden under N.C. Gen. Stat. § 150B-51(b) of showing that the Board prejudiced her substantial rights.

Petitioner filed timely notice of appeal.

## II.    Discussion

As she did before the superior court, Petitioner primarily raises issues of law on appeal, concerning the breadth of the Board's ordered discipline.

First, Petitioner asserts that "[t]he Board did not and does not have jurisdiction and regulatory authority over" her "private conduct[.]" Petitioner then argues that she "cannot be responsible for managing the medical prenatal and obstetrical care of

a chiropractic patient whether or not [Petitioner] has knowledge that no other provider was providing prenatal and obstetrical care for the chiropractic patient[.]" She also contends that "the Board cannot require [her] to treat only pregnant patients who are undergoing medical prenatal care and to ensure that such medical prenatal care is maintained at all times during the pregnancy[.]"

Additionally, Petitioner alleges that "there is no factual basis in [the] record, the Board's findings of fact or its conclusions of law that support an award of costs and/or attorneys' fees in this proceeding[.]" For the reasons explained below, Petitioner's arguments fail to persuade.

## A. Standard of Review

The Board is an "occupational licensing agency" as defined by N.C. Gen. Stat. § 150B-2(4b) (2023). Accordingly, hearings conducted by the Board are governed by the North Carolina Administrative Procedure Act ("the APA"). *Hardee v. N.C. Bd. of Chiropractic Exam'rs*, 164 N.C. App. 628, 632, 596 S.E.2d 324, 327, *disc. review denied*, 359 N.C. 67, 604 S.E.2d 312 (2004). The Board's final decisions are appealable to "the superior court of the county where the person aggrieved by [a final decision] resides[.]" N.C. Gen. Stat. § 150B-45(b)(2).

The superior court may reverse or modify the Board's final decision "if the substantial rights of the petitioners may have been prejudiced because the [Board's] findings, inferences, conclusions, or decisions are":

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under [N.C. Gen. Stat. §§] 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

*Id.* § 150B-51(b). In reviewing questions of fact, the superior court applies "the 'whole record test' and is bound by the findings of the [Board] if they are supported by competent, material, and substantial evidence in view of the entire record as submitted." *Hardee*, 164 N.C. App. at 633, 596 S.E.2d at 328 (cleaned up). The superior court reviews errors of law de novo. *Id.*

The superior court's order is appealable to this Court, which applies the same scope of review as for other civil cases. *See* N.C. Gen. Stat. § 150B-52. "Thus, this Court examines the [superior] court's order for errors of law; this twofold task involves: (1) determining whether the [superior] court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Hardee*, 164 N.C. App. at 633, 596 S.E.2d at 328 (cleaned up).

On appeal, the appellant bears the burden to show an error by the lower court. *Rittelmeyer v. Univ. of N.C. at Chapel Hill*, 252 N.C. App. 340, 349, 799 S.E.2d 378, 384, *disc. review denied*, 370 N.C. 67, 803 S.E.2d 385 (2017). "Unchallenged findings of fact are binding on appeal." *Sharpe-Johnson v. N.C. Dep't of Pub. Instruction*, 280

N.C. App. 74, 81, 867 S.E.2d 188, 192 (2021).

## B. Analysis

In that we are reviewing an order of the superior court acting as a reviewing court, our first task under the APA is to determine "whether the [superior] court exercised the appropriate scope of review[,]" *Hardee*, 164 N.C. App. at 633, 596 S.E.2d at 328 (citation omitted), as governed by the type of error asserted by Petitioner, *see* N.C. Gen. Stat. § 150B-51(c). Here, the superior court determined that most of Petitioner's asserted errors raised questions of law and applied de novo review to those issues. The sole exception appears to be the issue of whether the Board could "require the language in the informed[-]consent form" found in the decretal portion of the amended final decision, which the trial court determined was "a fact-based challenge" and to which it applied whole-record review.

On appeal, Petitioner argues that the informed-consent issue, like her jurisdictional and regulatory authority arguments, reveals "that the Board does not have the lawful authority to impose an obligation upon a licensee[.]" Petitioner also argues that the issue of the imposition of costs as a condition of reinstatement "is not based on any evidence, finding of fact, or conclusion of law that concludes that the fees assessed in this case were 'reasonable,' as required by statute" and, therefore, deserves whole-record review.

Nevertheless, Petitioner does not contend that this discrepancy in the trial court's applied standards of review is a reversible error in and of itself, and nor would

it necessarily be so. On appeal from an administrative tribunal, a reviewing court's "use of an incorrect standard of review does not automatically require remand. If the record enables the appellate court to decide whether grounds exist to justify reversal or modification of that decision under N.C. Gen. Stat. § 150B-51(b), the reviewing court may make that determination." *Vanderburg v. N.C. Dep't of Revenue*, 168 N.C. App. 598, 607, 608 S.E.2d 831, 838 (2005) (citation omitted). Accordingly, we review Petitioner's legal issues de novo, while applying the whole-record test to the costs issue.

### 1. Scope of the Board's Review

Petitioner first maintains that the superior court erred "when it failed to overturn the Board's decision" that she was negligent. Specifically, Petitioner directs her argument at the Board's conclusion of law 2, in which the Board determined that Petitioner "failed to secure appropriate care for" S.B. Petitioner alleges that the Board exceeded its "jurisdiction and regulatory authority" because this conclusion "does not relate to the practice of Chiropractic."

This challenge to the Board's conclusion of law 2 implicates the superior court's conclusion that "[t]he Board did not exceed statutory authority in finding [Petitioner] negligent in the practice of chiropractic." *See* N.C. Gen. Stat. § 90-154(b)(5) (authorizing the Board to take disciplinary action on the grounds of "[n]egligence, incompetence, or malpractice in the practice of chiropractic"). "Chiropractic" is defined in our General Statutes as "the science of adjusting the cause of disease by

- 12 -

realigning the spine, releasing pressure on nerves radiating from the spine to all parts of the body, and allowing the nerves to carry their full quota of health current (nerve energy) from the brain to all parts of the body." *Id.* § 90-143(a). Considering the scope of this definition, Petitioner contends that the Board's reasoning governs "[m]edical prenatal care and obstetrics"—topics that are not "subject to the Board's authority."

However, we need not consider the legal issue of whether the Board's jurisdiction extends to disciplining licensees for practice beyond the scope of chiropractic care—such as Petitioner's apparent practices here—because both the superior court and the Board also made unchallenged findings of fact and conclusions of law concerning Petitioner's negligence within the scope of the practice of chiropractic.

On judicial review of the Board's conclusion, the superior court found as fact that the Board's conclusion of law 2 was "supported by the findings that [Petitioner] failed to keep adequate clinical notes or records, and failed to perform proper examinations of the patient" and, therefore, "was supported by the evidence in the record, testimony at [the] hearing, findings of fact, and pertinent law." Moreover, in the underlying amended final decision, the Board found as fact that, *inter alia*, Petitioner did not document in any of her records her use of the "Webster Technique" that she used to treat S.B., which Petitioner conceded "should've been documented." Additionally, the Board found that—except for the initial visit—Petitioner's

treatment records for each of S.B.'s 38 office visits "is virtually identical to the others in all respects."

Petitioner does not challenge the superior court's findings of fact, which are thus binding on appeal. *Sharpe-Johnson*, 280 N.C. App. at 81, 867 S.E.2d at 192. Further, these findings of fact, as well as the Board's findings of fact in the underlying amended final decision, plainly relate to the practice of chiropractic. It is manifest that the superior court correctly concluded that the Board did not exceed its jurisdictional authority, as a matter of law, by disciplining Petitioner for her negligence in the practice of chiropractic. Petitioner's challenge is overruled.

Similarly, Petitioner contends that the superior court erred by concluding that "[t]he Board properly determined [Petitioner] failed to render acceptable care in the practice of chiropractic." The superior court also determined that the Board's conclusion of law 3 "was supported by the evidence in the record, testimony at [the] hearing, findings of fact, and pertinent law." And as before, Petitioner does not challenge these findings of fact, by which we are thus bound on appeal. *Id.*

Rather, Petitioner alleges that "the Board is holding [her] to a standard of care which is not within the practice of chiropractic and beyond the scope of the Board's power of regulation" and asserts that it is "outrageous that a chiropractor should be required to step in and take over for a medical prenatal provider when the chiropractor finds that the provider is no longer tending to the pregnant patient." However, as with her challenge to the negligence issue, Petitioner overreads the

Board's conclusion.

The Board did not discipline Petitioner because she failed to provide "medical prenatal" care; rather, as the superior court noted, the Board disciplined Petitioner because she failed to render acceptable *chiropractic* care. As the superior court astutely explained, it was "within the province of the Board to determine whether [Petitioner] committed negligence in the practice or failed to render acceptable care in the profession." Consequently, Petitioner's contention that the superior court erred by failing to overturn the Board's conclusion of law 3 also fails.

### 2. *Informed Consent*

Petitioner next challenges the superior court's conclusion that "[t]he Board did not abuse its discretion in imposing probationary terms in . . . paragraph 6 [of the decretal section of the amended final decision] based on the evidence presented at the contested case and in light of the entire record."

Paragraph 6 of the amended final decision's decretal section states:

> During probation, [Petitioner] shall not provide chiropractic care to any patient known to be pregnant unless such patient has executed an Informed Consent in substantially the same form as the Informed Consent attached to the Order Lifting Summary Suspension; provided that the Informed Consent form shall be edited to include a statement that such pregnant patient must be under the care of a formally trained and certified provider (obstetrician or nurse midwife) who could provide standard-of-care prenatal monitoring and labor/delivery care.

Petitioner contends that this informed-consent condition "is beyond the proper

regulation and supervision of the practice of chiropractic[.]" However, we have previously recognized that "[t]he discipline imposed upon chiropractors is consigned to the discretion of the Board. In exercising this discretion, the Board may consider evidence concerning a chiropractor's truthfulness and character. Indeed, honesty and good moral character are prevalent themes in the North Carolina Chiropractic Act." *Hardee*, 164 N.C. App. at 635, 596 S.E.2d at 329. Here, as detailed above, the Board found that Petitioner had committed unethical conduct "by publicly describing herself as a chiropractor 'who specializes in maternal and pediatric care[,'] when she does not have the qualifications" for such specialization. The challenged informed-consent requirement relates directly to the grounds for discipline and is properly within "the discretion of the Board." *Id.*

Petitioner also claims that "the Board appears to require [Petitioner] . . . to, in effect, assure that the chiropractic patient is at all times under the medical prenatal care of a 'formally trained and certified provider (obstetrician or nurse midwife) who can provide standard-of-care prenatal monitoring and labor/delivery care.'" Our review of the informed-consent form reveals no such appearance, however. The challenged portion of the informed-consent form cited by Petitioner places the burden of assurance on the prospective patient, not Petitioner; that is, read in concert with the rest of the informed-consent form, it is plain that the patient signing the form must assure Greenway that the patient is "under the care of a formally trained and certified provider (obstetrician or nurse midwife) who could provide standard-of-care

prenatal monitoring and labor/delivery care." When read in its proper context, the informed-consent requirement places no improper burden on Petitioner.

Petitioner further argues that the informed-consent requirement "violates the patient's freedom of choice in selecting chiropractic care" as guaranteed by N.C. Gen. Stat. § 90-157.1, which provides:

> No agency of the State, county or municipality, nor any commission or clinic, nor any board administering relief, social security, health insurance or health service under the laws of the State of North Carolina shall deny to the recipients or beneficiaries of their aid or services the freedom to choose a duly licensed chiropractor as the provider of care or services which are within the scope of practice of the profession of chiropractic as defined in this Chapter.

N.C. Gen. Stat. § 90-157.1.

However, the Board persuasively observes that it is not a "board administering relief" under § 90-157.1, and it does not "deny [to any] recipients or beneficiaries of [its] aid or services the freedom to choose a [duly] licensed chiropractor" when it imposes a condition of reinstatement upon Petitioner's license. Nothing about the required informed-consent language denies any "patient's freedom of choice"—either as initially provided by Greenway or as revised by the Board. Petitioner's argument is thus overruled.

### 3. *Reasonable Costs*

Finally, Petitioner challenges the superior court's determination that the Board properly imposed costs of the disciplinary proceedings as a condition of

reinstatement. On this issue, the superior court held that "the Board has sufficient statutory authority to impose costs and attorney's fees for a licensee found to have violated Board statutes and rules pursuant to N.C. Gen. Stat. § 90-157.4(d)" and that, accordingly, Petitioner "failed to show that the Board erred with respect to awarding costs and/or attorney's fees."

Petitioner contends that the Board impermissibly imposed costs without making findings of fact or conclusions of law as to the reasonableness of the $10,000.00 award of costs. "If a licensee is found to have violated any provisions of this Article or any rule adopted by the Board, the Board may charge the costs of a disciplinary proceeding, including reasonable attorneys' fees, to that licensee." N.C. Gen. Stat. § 90-157.4(d). Petitioner homes in on the word "reasonable" and argues that the Board's imposition of costs, "without any factual foundation and analysis, . . . cannot stand."

Petitioner cites *Early v. County of Durham, Department of Social Services*, in which this Court addressed the reasonableness of attorney's fees under N.C. Gen. Stat. § 6-19.1. 193 N.C. App. 334, 346–47, 667 S.E.2d 512, 521–22 (2008), *disc. review denied*, 363 N.C. 372, 678 S.E.2d 237 (2009). However, that case is inapposite, as a court may award attorney's fees pursuant to § 6-19.1 "only upon a finding that the agency acted without substantial justification and that there are no special circumstances that would make the award of attorney's fees unjust." *Winkler v. N.C. State Bd. of Plumbing, Heating & Fire Sprinkler Contr'rs*, 374 N.C. 726, 734, 843

S.E.2d 207, 213 (2020). "The purpose of [N.C. Gen. Stat.] § 6-19.1 is to curb unwarranted, ill supported suits initiated by State agencies, by requiring that the State's action be substantially justified." *Id.* at 735, 843 S.E.2d at 213 (cleaned up). Not only was Petitioner not the prevailing party in this case, but it is evident that the Board's initiation of this disciplinary proceeding was neither "unwarranted" nor "ill supported[.]" *Id.* (citation omitted).

Here, as noted above, the superior court correctly found that "[t]he Board has sufficient statutory authority to impose costs and attorney's fees for a licensee found to have violated Board statutes and rules pursuant to N.C. Gen. Stat. § 90-157.4(d)." The court also found that Petitioner "failed to show that the Board erred with respect to awarding costs and/or attorney's fees." So too on appeal. Petitioner primarily asserts that "[t]here is no factual or legal basis upon which to determine whether the award of costs" was "reasonable." By grounding her argument in the requirement that the Board make explicit findings and conclusions regarding reasonableness, however, Petitioner has essentially forgone any attempt to argue that the amount of the award was *un*reasonable. Petitioner merely alleges—without support—that "[t]he assessment of $10,000.00 against [her] is punitive in nature."

It is axiomatic that the burden is on the appellant to show an error by the lower court. As the superior court concluded, the Board indisputably has the statutory authority to impose an award of reasonable costs. N.C. Gen. Stat. § 90-157.4(d). Because Petitioner does not demonstrate on appeal how the award of costs was

unreasonable, Petitioner has not carried her burden. Therefore, this argument is overruled.

## III.    Conclusion

Accordingly, we affirm the superior court's order affirming the Board's amended final decision.

AFFIRMED.

Judges HAMPSON and THOMPSON concur.